## MORRIS v. OGDEN STATE BANK et al.

No. 5187. Decided January 4, 1934. (28 P. [2d] 138. Rehearing Denied January 7, 1935.

*E. M. Dunn,* of Salt Lake City, for appellant.

*Wade M. Johnson,* of Ogden, for respondents.

WOOLLEY, District Judge.

In this case the district court sustained joint and several demurrers, for want of facts, filed by the defendants, to the third amended complaint. The plaintiff elected to stand upon his pleading and appeals from the resulting judgment of dismissal. The question to be determined is whether the third amended complaint states facts sufficient to constitute a cause of action against the defendants. Since all of the wrongs complained of are alleged to have been committed in the furtherance of a conspiracy to which all of the defendants were parties, so that, if one is liable, then all are liable to respond in damages to the plaintiff, it is not necessary to examine the case from the standpoint of each defendant separately; but because of such allegation it will suffice to treat the case as if all of the defendants are in the same situation.

In his third amended complaint the plaintiff alleges: That one Thomas Thomas, prior to the year 1923, was the owner of a large amount of ranch and grazing land in Box Elder county, Utah, and was engaged in the breeding and raising of a large number of sheep; that prior to September, 1923, said Thomas had become indebted to various persons, namely, Charles S. Morris, who is plaintiff herein, Ogden State Bank, Heber C. Simpson, and Warren L. Shobert, in the several amounts hereinafter appearing; that payment of said several debts was secured by mortgages and mortgage liens in different forms upon lands owned by Thomas; that payment of plaintiff's debt was secured by mortgages upon lands which plaintiff had sold to Thomas; that during the winter of 1921 and 1922 said Thomas lost a large number of his sheep, so that his income therefrom was reduced to the point where he could not pay his debts as they became due, and that some of his creditors were contemplating foreclosure proceedings; that said Thomas had been a valued customer of the Ogden State Bank, and defendant Bigelow, who was president of that bank, was not in favor of such proceedings; that Bigelow, therefore, in behalf of the bank,

proposed to the plaintiff and the other Thomas creditors a plan whereby he stated it would be possible to save the land and the sheep business to Thomas and at the same time pay all of said creditors their claims in full, and that Bigelow undertook to secure the assent of all of the Thomas creditors and of Thomas himself to said plan; that the substance of said plan was that the creditors should extend the time of payments of their several debts for a period of five years, that Thomas should place the mortgaged property in the hands of the bank, as trustee or agent for the creditors, to hold and manage the same during that time, that additional sheep should be purchased with which to restock the lands, that the debts to be incurred in the purchase of additional sheep and the debts of the several creditors would be paid out of the net income of the business, and that, when the debts were so paid, the property would be restored to Thomas; that all of said creditors and Thomas agreed to said plan; whereupon, in order better to carry out the intention of all parties concerned, the Grouse Creek Land & Livestock Company was organized as a corporation under the laws of this state; that said Thomas then conveyed the title to all of the mortgaged lands to said corporation; that said creditors released their mortgages and surrendered the notes and other evidences of indebtedness which they held against Thomas and took stock in the corporation in lieu thereof; that A. P. Bigelow was president and a director of the bank and became a director and secretary-treasurer of the Grouse Creek Land & Livestock Company; that H. M. Rowe was a director of the bank and became a director and president and manager of the said live stock corporation; that John K. Spiers was a director of the bank and became a director of the live stock company; and that S. S. Simpson was the confidential advisor of the other defendants in matters pertaining to the business of the live stock company and was engaged as foreman of said company and later became a director thereof.

Attached to the third amended complaint and made a part

thereof by reference are copies of two certain contracts, both dated September 24, 1924. One is between Thomas Thomas, as the party of the first part, the Grouse Creek Land & Livestock Company, a corporation, as party of the second part, and Ogden State Bank, Charles S. Morris, Heber C. Simpson, and Warren L. Shobert, as parties of the third part, which contract, omitting the formal parts, reads as follows:

"Whereas, there has been heretofore organized the party of the second part; and

"Whereas, the said Thomas Thomas has heretofore deeded to said corporation his equity in certain land situate in Box Elder County, Utah, subject, however, to the claims of the parties of the third part, and

"Whereas, the party of the first part is indebted to the parties of the third part in the sums hereinafter set out, to wit; Ogden State Bank $70,000.00; Charles S. Morris $47,700.00; Heber C. Simpson $15,500.00; Warren L. Shobert $1,300.00;

"Now, Therefore, it is mutually understood and agreed that the parties of the third part shall relinquish their claim against said property and in lieu of said claims and in payment of respective indebtedness shall take capital stock in the said party of the second part of the par value of said claims, it being further understood and agreed that the said parties of the third part are simultaneously herewith to give and grant to the party of the first part an option to purchase said stock upon the terms and conditions as set out in said option, and that said option shall represent and embody all the right, title and interest of the said party of the first part in said real estate and said stock shall be in full payment of the claims of the respective parties of the third part."

The other contract above mentioned, omitting the formal parts, reads as follows:

"That, Whereas, the parties of the second part are the owners of the amount of capital stock of the Grouse Creek Land & Livestock Company, a corporation of the State of Utah, hereinafter set opposite the names of each of said parties, as follows, to wit: Ogden State Bank 700 shares, Charles S. Morris 477 shares, Heber C. Simpson 155 shares, Warren L. Shobert 13 shares, and

"Whereas, the party of the first part is desirous of purchasing said stock from the parties of the second part on the terms and conditions hereinafter set out:

**132**

"Now, therefore, the parties of the second part, for and in consideration of the sum of Ten and no/100—($10.00)—Dollars and other valuable consideration, in hand paid by the party of the first part, receipt of which is hereby acknowledged, do hereby give and grant unto the party of the first part an option to purchase said stock upon the following terms and conditions, to wit:

"At the price of one hundred ($100.00) Dollars per share with interest at the rate of eleven (11) per cent per annum for the first three (3) years after the date hereof, nine per cent (9%) per annum for the following year and eight per cent (8%) per annum for the last year; and

"Whereas, the parties of the second part, or some of them, or some other person or corporation may loan and advance to said corporation money prior to the expiration of this option,

"Now, Therefore, it is understood and agreed as a condition precedent to the execution of this option by the party of the first part that the money's advanced and loaned to said corporation by said parties of the second part, or any of them, or any other person or corporation shall be repaid with interest before or at the time the party of the first part shall exercise his right of option herein.

"It is further understood and agreed that the right of option herein granted to the party of the first part shall be exercised by him within any time within (5) years from the date hereof and that in the event that the said party of the first part does not so exercise his option within said period, then all of his right, title and interest under and pursuant to this agreement shall terminate.

"It is further understood and agreed that for the purpose of protecting all of the parties hereto and holding the said stock intact, pursuant to the terms of this agreement, that all of said stock herein mentioned shall be left in escrow, or in trust with the Ogden State Bank, of Ogden, Utah, under and pursuant to the terms of this agreement, and, that upon the payment of the money's herein required to be paid by the party of the first part and upon full payment of any moneys advanced or loaned as hereinbefore provided to said corporation by the parties of the second part or any of them, or by some other person or corporation, that the said Ogden State Bank, of Ogden, Utah, is hereby authorized to deliver said stock to the party of the first part; and

"It is further understood and agreed that the option hereby granted is as to said stock as a whole.

"It is further understood and agreed that if during the life of this agreement any dividends are declared upon said stock that said sum shall be credited by the parties of the second part upon the balance of

the purchase price hereunder required to be paid by the party of the first part.

"It is further understood and agreed that the said Ogden State Bank may issue to the said parties of the second part certificates as shall indicate the proportionate share of said parties in and to said stock, or the proportion coming from said stock."

The plaintiff then alleges: "All of which said contracts and agreements, so-called, and the conveyances theretofore made by the said Thomas Thomas to the said Grouse Creek Land & Livestock Company, together with the oral understandings and agreements of the parties, made prior to and contemporaneous with the execution and delivery of the above mentioned conveyances, written contracts and agreements, so-called, constituting one entire transaction; and that the same were understood and agreed by and on the part of all the parties thereto to constitute a mortgage transaction whereby the said mortgagor, Thomas Thomas, aforementioned, waived his right of redemption therein"; and "that at no time or at all did he, plaintiff, agree with the said Thomas Thomas, hereinabove mentioned, to discharge the said Thomas Thomas, above mentioned, from the obligation of said debt to this plaintiff hereinabove set out and described, upon the conveyance by the said Thomas Thomas to the aforementioned Grouse Creek Land & Livestock Company, of the lands herein described, and more particularly the lands covered by the lien of this plaintiff hereinabove mentioned and described"; and that "at no time or at all in the course of dealing which led up to the consummation of the mortgage transaction set out and described in the complaint was plaintiff solicited by the defendants, or any of them, to associate himself with the defendants, or any of them, otherwise than as alleged and set out in this complaint"; that, upon the incorporation of the livestock company, the creditors, through the agency of the corporation, took possession of the Thomas Thomas lands and sheep; and that on or about May 1, 1924, plaintiff assigned to Ogden State Bank his stock in the live stock

corporation and pledged the same to Ogden State Bank as security for the payment of a debt in the sum of $9,000, which amount plaintiff borrowed from said bank with which to pay a debt of like amount which he owed at another bank and for payment of which his Thomas Thomas notes and mortgages had been pledged as security. It is not alleged when his note to Ogden State Bank became due, but it is alleged that Bigelow promised plaintiff, at the time negotiations were under way looking to the adoption by the Thomas creditors of the Bigelow plan, that plaintiff would not be called upon to pay said debt within the five-year period during which the payment of the Thomas debts were expected to be paid.

The foregoing is a summary of the first sixteen paragraphs of the third amended complaint. The pleading then continues as follows:

"17. Plaintiff alleges that the within named defendants, cooperating, combining, confederating and conspiring, with intent and design to hinder, delay and defeat collection of this plaintiff's said claim or mortgage lien, and to prevent a full or any recovery of the debt due him, plaintiff, and to force, coerce and compel plaintiff to transfer and deliver said evidences of indebtedness above mentioned and described, the property of this plaintiff, to them or one or some of them, for a sum less than the real or true value thereof, with intent to derive profit to said defendants, or some or one of them, wilfully, wrongfully and fraudulently, without the consent of this plaintiff, violated the terms of said contracts and agreements of mortgage hereinabove alleged and set out, and the trust in favor of this plaintiff thereby created, in divers and sundry respects, ways and manners, as follow, to wit:

"By repudiating, prior to the transfer by this plaintiff of the evidence of indebtedness and the mortgage lien or liens of this plaintiff hereinabove mentioned and referred to, to the said defendant, H. M. Rowe, and/or his said co-defendants, said contracts and agreements or mortgage hereinabove mentioned and referred to, as such; and by word, act and conduct, publicly and openly and notoriously asserting, setting up and claiming that the same constituted a sale, rather than a mortgage, by the said above mentioned Thomas Thomas, of the lands herein above described, to the said within mentioned Grouse Creek Land & Livestock Company.

"By intermingling with the herds operated by and in the name of the said Grouse Creek Land & Livestock Company, the trust property, during the year 1926, of approximately 500 head of sheep owned or claimed to be owned by the defendant, S. S. Simpson, and the grazing of the same upon the lands hereinabove described.

"By the wrongful and unlawful diversion of the income or profits from said business above mentioned to the purchase of large tracts of grazing lands, as follows: On April 16, 1926, from the Southern Pacific Railroad Company of 5,032 acres of grazing lands in Box Elder County, Utah, and Elko County, Nevada, commonly known as the 'Kilgore Country,' at a cost of $1.65 per acre. On April 19, 1927, from Lavella Fenstermaker, 640 acres of ranch and grazing lands in Box Elder County, Utah, and Elko County, Nevada, commonly known as the 'Fenstermaker Ranch,' for the sum of $15,000.00.

"The careless and negligent care and handling of the sheep operated by and in the name of the said Grouse Creek Land & Livestock Company resulting in losses of the same, during the years 1926 and 1927, of approximately four thousand head, which said losses can not be accounted for in the customary and usual manner.

"By the sale, in the year 1926, of five hundred head of sheep from the herds operated by and in the name of the said Grouse Creek Land & Livestock Company to the defendant S. S. Simpson, for the sum of $6.75 per head, whereas the sum of $8.00 per head was the fair and reasonable value of said sheep at the time of such sale.

"By raising the salary of the defendant, H. M. Rowe, as manager of the said Grouse Creek Land & Livestock Company, from the fair and reasonable sum of $100.00 per month to the unreasonably high and exorbitant sum of $200.00 per month, said raise being made prior to January 1, 1927.

"By concealing the income from said sheep operated by and in the name of the said Grouse Creek Land & Livestock Company aforesaid, and failing to account for the same, in that the sum of 46 cents per pound was obtained from the sale of the wool from said sheep in the year 1925, whereas only 45 cents per pound, on the sale of 54,222 pounds, was accounted for as the sale price of the same.

"By such wilful, careless, negligent and inaccurate keeping of the accounts of said business operated by and in the name of the said Grouse Creek Land & Livestock Company, with intent and design that the same should not reflect the true condition of said business, but rather would have an adverse effect thereon, and particularly the claim and mortgage lien or liens of this plaintiff hereinabove mentioned and described, in the following instances and respects, to wit:

"That although said business paid in income tax to the Treasury Department of the Government of the United States in and for the year 1926, said business was later compelled to pay a further, or deficiency income tax, on the profits of said business for the said year of 1926, in the sum of $3,559.65, exclusive of interest thereon.

"That, although the accounts of said business above mentioned show the usual and ordinary disbursements of a sheep and land enterprise for the year 1925, as follows: Wages $10,792.74; Groceries $1,940.76; Hay and Grain $3,284.93; Salt $126.25; Freight $2,029.06; Shearing $1,785.75; Building and Improvements $635.20; Land Rentals $758.63; Interest $5,083.75; Taxes (sheep) $1,548.05; Taxes (land) $998.41; there was the further excessive and unexplained disbursement of the sum of $995.28 under the heading 'camp'; and the further excessive and unexplained disbursement of the huge sum of $4,138.46 under the heading 'miscellaneous.'

"That, although the accounts of said business above mentioned show the usual and ordinary disbursements of a sheep and land enterprise for the year 1926, as follows: (here certain expenditures are enumerated much as above), there was the further excessive and unexplained disbursement of the sum of $1,320.45 under the heading 'camp'; and the further excessive and unexplained disbursement of the huge sum of $5,732.53 under the heading 'miscellaneous.'

"That, although the accounts of said business above mentioned show the usual and ordinary disbursements of a sheep and land enterprise for the year 1927, as follows: (here they are enumerated, much as above), there was the further excessive and unexplained disbursement of the sum of $1,209.48 under the heading 'camp'; and the further excessive and unexplained disbursement of the huge sum of $6,838.19 under the heading 'miscellaneous.'

"18. Plaintiff alleges that the defendant Ogden State Bank, by and through its officers and agents, in violation of its said promises and agreements made to and with the plaintiff as herein above alleged, and in aid of the conspiracy hereinabove alleged and set out, during a period of several months next prior to December 29, 1927, made demands upon this plaintiff for payment to said defendant Ogden State Bank of the debt or obligation of this plaintiff to the said defendant Ogden State Bank, in the sum of Nine thousand ($9,000.00) dollars, and interest, being the obligation created in favor of said defendant Ogden State Bank by reason of the loan to this plaintiff for the purpose of discharging the debt of this plaintiff at the State Security Bank, of Brigham City, Utah, as hereinabove alleged, to secure payment of which plaintiff had assigned to defendant Ogden State Bank the Thomas securities or mortgage lien or liens owned by this plaintiff,

and threatened this plaintiff with a forfeiture of the same unless payment be made as demanded.

"19. Plaintiff further alleges that the income and profits from said sheep and land enterprise hereinabove mentioned should have been sufficient, and, but for the wilful, wrongful and unlawful acts and omissions of the said defendants as hereinbefore alleged, would have been sufficient, plaintiff receiving credit for his pro rata share thereof, to enable plaintiff to pay off and discharge his said debt or obligation at said defendant Ogden State Bank on the 29th day of December 1927.

"20. Plaintiff alleges that if his, plaintiff's said claim or mortgage lien or liens hereinabove mentioned and described, was or were not of greater value on the said 29th day of December, 1927, than at any previous time, said fact was due to the wilful, wrongful and unlawful acts and omissions of the said defendants as hereinabove alleged, and to no fault of plaintiff.

"21. Plaintiff alleges that by reason of the repudiation of the aforesaid contracts and agreements of mortgage, as such, by the defendant Ogden State Bank, and the claim and contention of the said defendants as hereinabove alleged, that said contracts and agreements, together with the conveyances by the said Thomas Thomas to the within named Grouse Creek Land & Livestock Company, constituted, and was intended by all the contracting parties as, a conveyance absolute, whereby the said Thomas Thomas sold to the said Grouse Creek Land & Livestock Company, aforesaid, the lands hereinabove described; and because of the wide and general knowledge and/or belief, known to this plaintiff, of the said intention of the said defendants to impair or totally destroy the value of this plaintiff's said claim or mortgage securities as an asset in the hands of this plaintiff, of his assignee or assignees, and to deprive plaintiff, his assignee or assignees, of a full or any recovery thereon, this plaintiff was unable to market his said securities above mentioned, or to utilize the same as collateral for a loan of a sufficient sum of money with which to pay off and discharge his, plaintiff's said, debt or obligation aforesaid to the Ogden State Bank, defendant herein.

"That by reason of the foregoing, and under great duress, and in fear of losing his entire claim and mortgage lien or liens hereinabove mentioned and described, or to avert a forfeiture of the same through prolonged and costly litigation, this plaintiff acceded to the demands of the defendant Ogden State Bank, and on the 29th day of December, 1927, turned over to said defendant, Ogden State Bank and/or its officers and agents, his, plaintiff's, said claim and mortgage liens or securities above mentioned, the same being taken in the name of the

defendant H. M. Rowe, receiving or accepting from said defendants, or one or some of them, the sum of $23,900.00, or one-half the value thereof, exclusive of the interest that had accumulated thereon, which, up to the time of the filing of this complaint, amounted to the sum of $24,866.62, whereby plaintiff suffered loss or injury, and was damaged in the sum of $48,766.62.

"Wherefore, plaintiff prays judgment against said defendants for damages in the sum of $48,766.62, together with 'his costs herein expended."

The appellant's argument in support of his complaint is that the deed of conveyance executed by Thomas Thomas to the Grouse Creek Land & Livestock Company, in view of all the facts and circumstances alleged, must be held in equity to constitute a mortgage; so that the relationship which had existed between Thomas, Morris, the bank, and the other creditors of Thomas continued thereafter the same as before. That is to say, Thomas was still a debtor and mortgagor and Morris and the bank and the others named were still his creditors and mortgagees. Then since one of said creditors, namely, the bank, acting through the agency of the livestock company, which it dominated and controlled, went into possession of all of the mortgaged property, it became thereby, as one of several mortgagees in possession, a trustee holding possession of said property for the use and benefit of Thomas as mortgagor and of his creditors as mortgagees; and that as such trustee the bank must be held to a performance of all the duties and subject to all the liabilities which rest upon trustees when they come to deal with the trust estate and with their cestuis que trustent with respect thereto; that the bank is guilty of a breach of said trust, by repudiating the trust and claiming that the transaction with Thomas constituted a sale of the property by him to the live stock company, by mingling Simpson's sheep with the mortgaged sheep and permitting them to eat the feed which should have been used to feed the mortgaged sheep, by selling sheep to Simpson for less than their fair market value, by diverting the income and

profits of the enterprise to the purchase of lands, by so keeping the books and accounts of the business that they failed to reflect the true condition thereof, and by its negligence in losing or failing to account for 4,000 head of the mortgaged sheep; that by reason of such breach of trust the plaintiff has been damaged as alleged in his complaint; and that, since all of the foregoing acts were done by the bank and the other defendants in furtherance of a conspiracy which they had entered into to injure this plaintiff, they are all liable to him as joint tort-feasors.

The major premise of his argument is the proposition that the transaction which was had between Thomas Thomas and his creditors and the live stock company must be held in equity to be a mortgage, resulting in the bank becoming, as a mortgagee in possession of the mortgaged property, a trustee for the plaintiff Morris and for Thomas Thomas and his other creditors named in the complaint. Upon the strength of this proposition the complaint must stand or fall. That counsel for appellant so understands the matter is shown by the following statement which we quote from his brief:

"The all important question for determination is, Does the transaction here involved constitute a mortgage or security for debt; for once that is determined in the affirmative, it is a comparatively simple matter to fix the duties, and corresponding legal liabilities, of the defendants to plaintiff Morris."

Since this case was argued and submitted for determination, this court has handed down an opinion in another case which practically disposes of this appeal. In the case of *Thomas* v. *Ogden State Bank*, 80 Utah 138, 13 P. (2d) 636, in which was involved the identical transaction with which we are concerned here, this court held that said transaction constitutes a conditional sale and not a mortgage. In that case the court reached such conclusion largely because it appeared that the Thomas creditors had released and discharged him from his several debts to them and had taken shares of stock in the live stock company in lieu of such

debts; for, without a debt to be secured, there can be no mortgage as security. The same controlling facts which compelled the court to its conclusion in that case also appear in this case and compel us to the same conclusion. We therefore hold in this case, upon the authority of the Thomas Case and for the reasons therein stated, that the transaction had between Thomas Thomas and his creditors and the Grouse Creek Land & Livestock Company, as alleged in the third amended complaint, constitutes a conditional sale and not a mortgage.

This being so, it follows that the Ogden State Bank was not a mortgagee of Thomas, after the completion of that transaction, and hence was not a trustee for Thomas or his former creditors with respect to the property which he conveyed to the live stock company or the property which was thereafter acquired by the live stock company; and therefore the bank did not owe any duty to the plaintiff, as a trustee, in possession of such property.

Since the plaintiff's whole case is grounded upon the law relating to trusts and trustees, which does not apply to the case because there was no trust such as he alleges and claims to have existed, the ultimate conclusion is that the third amended complaint does not state facts sufficient to constitute cause of action.

In this view of the case, it is almost needless to state there was no wrong done to Morris or to any one else when Bigelow and the other defendants asserted and gave out the claim that Thomas had sold and not mortgaged his property to the live stock company. It is said that this was a wrongful thing to do because it amounted to a repudiation of a trust by a trustee. But there was no repudiation of a trust because there was no trust.

As to the alleged negligence and mismanagement of the business of the live stock company by the defendants, it is sufficient to point out that those matters, in so far as they are actionable at all, may be redressed in an action brought

by the live stock company, or by some interested person in its behalf. They are not such wrongful acts or omissions that may be redressed in an action brought by the plaintiff individually directly against the defendants, although they may have resulted in damages to him by depreciating the value of his stock. It is said in Fletcher's Cyc. of Corpns., vol. 6, § 4051:

"While an injury to a corporation resulting from wrongdoing, fraud or negligence by corporate officers operates, indirectly, as an injury to stockholders, the injury to stockholders is secondary and the injury to the corporation is primary. It is for the corporation, therefore, to institute action for wrongs inflicted upon it by corporate officers or to set aside contracts made in fraud of corporate rights."

This we understand to be the general rule. *Bartlett* v. *New York, N. H. & H. R. Co.*, 221 Mass. 530, 109 N. E. 452; *Niles* v. *New York Cent. & H. River R. Co.*, 176 N. C. 119, 68 N. E. 142. We see no reason why the rule should not be applied to the wrongs complained of in this action.

There are two other matters which we will mention, lest it be thought that we have overlooked them. It appears from the allegations of the complaint that the certificates for the shares of stock owned by the former Thomas creditors in the live stock company were deposited with the Ogden State Bank, which held them pursuant to the contract which the creditors had with Thomas. It may well be that as such depositary of the shares the bank was a trustee, in a limited sense, with respect to them. It also appears that the bank held the Morris shares as pledge to secure the payment of the $9,000 debt which Morris owed to the bank. As such pledgee the bank may be said to have been a trustee, holding the shares for the benefit of itself and of Morris. 49 C. J. 920, § 52; Id. 967, § 168; *Foote* v. *Utah Com. & Savings Bank et al.*, 17 Utah 283, 54 P. 104; *Hyams et al.*, v. *Bamberger et al.*, 10 Utah 3, 36 P. 202. But, strictly speaking, the bank was not a trustee with respect to the shares because the title was still in Morris and was not in the bank. 49 C. J. 898, § 8. However, it is not claimed that the bank breached any duty which it

owed to Morris because it held the shares in escrow, or any duty which it owed to him because it held his shares as security for the payment of the $9,000 debt. The duty of the bank as the depositary of all the shares was to keep them safely and deliver them to the persons who might become entitled to receive them under the contract. It does not appear that the bank failed to do anything that was required of it in that respect. Its duty as pledgee of the Morris shares was to keep them safely as security for the payment of the debt for which they were pledged; if it sold them or caused them to be sold when the debt became due, it was in duty bound to apply the proceeds to the payment of the debt and to pay the surplus, if any, over to Morris; and it was in duty bound not to do anything with respect to those particular shares that would render them less valuable and thus cause damage to the owner of them. There is no allegation in the complaint that the bank was remiss in any way as pledgee of the Morris shares. It is alleged that the bank called upon Morris to pay his debt before the expiration of the five-year period within which Bigelow stated, in his negotiations, it would be possible for the Thomas debts to be paid, and at an earlier date than Bigelow had led plaintiff to believe he would be called upon to pay it. But it is not alleged that the bank demanded payment of the note before it became due by its own terms. It is not made to appear when the note was due. If the note was due when the bank demanded payment, it was not a wrong nor a breach of trust for the bank to call upon Morris to pay it and to threaten to sell the stock if he failed to do so. If the bank called upon Morris to pay the note before it was due, that was a request with which Morris must have known he need not comply. It was not a wrong for which he may recover damages. The plaintiff's whole-theory, as is shown by many allegations of his complaint, is that the bank was a trustee, or that the bank and the other defendants were trustees, for Morris with respect to the land and other property which Thomas conveyed to the live stock company; and

it is for a breach of duty resting upon the bank and the other defendants by reason of such trust that he brings this action. The trusts, if they may be said to be trusts, which are mentioned in this paragraph, are only incidentals; and we do not regard them as lying at the foundation of the action.

The judgment is affirmed. Appellant to pay the costs.

STRAUP, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.

MOFFAT, J., did not participate herein.