**ANR LIMITED INC., a Delaware corporation, Plaintiff,**

v.

**Kenneth CHATTIN, Dorothy Hansen, aka Dorothy Chattin, Phillip Chattin, Robert Chattin, and John Does I through X, Defendants.**

Civ. No. C–87–845W.

United States District Court, D. Utah, C.D.

July 20, 1988.

Kent H. Murdock, Salt Lake City, Utah, for plaintiff.

Clark W. Sessions, John F. Clark, Salt Lake City, Utah, for defendants Kenneth Chattin and Dorothy Hansen.

Rodney G. Snow, Gary L. Paxton, L. Mark Ferre, Salt Lake City, Utah, for defendants Phillip Chattin and Robert Chattin.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

All defendants in this action have brought a motion to dismiss or a motion to stay this action.[1] The court held a hearing on this motion on May 19, 1988. Rodney G. Snow and L. Mark Ferre appeared on behalf of Phillip and Robert Chattin. John F. Clark appeared on behalf of Kenneth Chattin and Dorothy Hansen. Kent H. Murdock appeared on behalf of ANR Limited Inc. ("ANR").

Prior to the hearing, the court had carefully reviewed all memoranda filed by the parties. In addition, the court has reviewed supplemental memoranda addressing the *Dana Molded Products* case filed by ANR and Phillip and Robert Chattin. After taking this matter under advisement, the court has further considered the law and facts and now renders the following memorandum decision and order.

*Factual and Procedural Background*

In June, 1984, Utex Oil Company ("Utex") purchased all of the interests of Shell Oil Company in the Altamont Field located in Utah and similar interests in the MonDak Field located on the border of Montana and North Dakota. Subsequently, Utex sold various percentages of its Shell acquisition to other oil and gas companies, of which ANR was one. These interests in the Altamont and MonDak Fields are referred to in the documents as the "Joint Property." ANR paid $110,500,000.00 for approximately 50% of the Joint Property, which included hundreds of oil and gas leases, easements and rights-of-way, oil and gas wells, and a gas processing plant. Utex sold all its interest in the Joint Property except for an undivided 5% plus an increased interest in new wells that would be drilled on the Joint Property.

When ANR acquired from Utex its interests in the Joint Property, ANR and Utex entered into a Restated Participation Agreement dated July 26, 1984, whereby the parties agreed upon the terms and conditions by which the Joint Property would be operated by Utex, the method by which the parties would account to one another, and the precise relationship of the parties. Paragraph VI of the Restated Participation Agreement sets forth that

Utex will have the status of a fiduciary with regard to the non-operators [such as ANR] as to the control and expenditure of joint funds of the parties.

Accordingly, Utex contractually agreed to control and expend funds on behalf of ANR and others as a fiduciary.

The Restated Participation Agreement incorporated two operative documents which described in specific terms how Utex was to fulfill its fiduciary duties to ANR

---

1. Since the related adversary proceeding has been settled and dismissed there is no need to consider a stay regarding this action.

and the other non-operating owners. Of these documents, the Operating Agreement was the procedural manual describing how the collective monies of Utex, ANR, and the other non-operators were to be spent in the operation of the Altamont and MonDak Fields. In accordance with the Operating Agreement, Utex set up a joint account (the "Joint Account") from which disbursements were made and monies received from revenues, ANR, and other non-operator working interest holders. The Operating Agreement provided for the expenditure of funds in the Joint Account toward only production activity on the Joint Property. The second document, entitled the Accounting Procedures Joint Operation, set out the detailed accounting requirements for Utex as Operator.

Pursuant to the agreements, Utex, as Operator, collected funds from all working interest owners, including itself and ANR, to pay the costs and expenses incurred in operating the Joint Property. The collection process consisted of Utex sending to each working interest owner documents known as "cash-calls" (advance billings based on projected costs) or "joint interest billings" which were invoices for the costs of operation and drilling incurred and paid by Utex. Paragraph 2 of the Accounting Procedures document states in pertinent part that "Operator [Utex] shall bill Non–Operators ... for their proportionate share of the Joint Account for the preceding month." Pursuant to the Restated Participation Agreement, Utex was a fiduciary to ANR and other working interest holders with respect to the control and expenditure of joint funds held in the Joint Account.

On August 1, 1986, Utex filed a Chapter 11 petition in the bankruptcy court. On September 2, 1986, ANR and two other creditors filed an adversary proceeding against Utex in the Utex bankruptcy case. Utex answered and counterclaimed against ANR, among others, on October 29, 1986.

In the adversary proceeding, ANR and the other plaintiffs alleged that Utex was a trustee of either an express or implied trust and was required to hold and pay to the plaintiffs their respective proportionate shares of revenue from wells operated by Utex on the Joint Property. Moreover, the plaintiffs alleged that Utex, as trustee, violated its fiduciary duties by failing to account for the plaintiffs' revenues, commingling plaintiffs' revenues with its own funds, and misappropriating the plaintiffs' revenues for its own uses. Plaintiffs further alleged that Utex perpetrated a scheme to defraud non-operators of the oil and gas wells and converted the plaintiffs' revenues for its own uses and purposes. Utex filed an answer and counterclaimed against ANR. In particular, Utex objected to the claims relating to Utex's alleged misuse of joint interest billings and claimed that ANR owed Utex certain sums in prepetition joint interest billings.

On March 30, 1988, the bankruptcy court entered an order approving a settlement agreement between Utex Oil Company and ANR. This settlement agreement disposed of all claims and counterclaims raised in the adversary proceeding.

Prior to the settlement agreement with Utex, ANR filed the present action against former officers and directors of Utex. The complaint seeks to hold the defendants personally liable for the mismanagement and misappropriation of the Joint Account and for obtaining money from ANR by fraudulent misrepresentations in connection with the operation of wells on the Joint Property. ANR bases its action against the defendants on theories of alter ego, breach of contract, breach of fiduciary duty, theft and conversion, fraudulent misrepresentation, constructive trust, and violations of federal and state racketeering laws.

In support of its claims, ANR alleges that the defendants assisted Utex in mismanaging the Joint Account belonging to Utex and other non-operator working interest holders. On behalf of Utex, the defendants failed to pay vendors, suppliers and contractors from the joint funds. In addition, the defendants failed to contribute Utex's pro-rata share for operating expenses and misappropriated joint funds for Utex's sole use and benefit. ANR further contends that the defendants failed to properly account for the joint funds and provid-

ed ANR with false joint interest billings and cash calls. ANR also asserts that the defendants made several material misrepresentations to ANR concerning the Joint Property, Joint Account, and Utex's financial condition.

Since the filing of this action, the bankruptcy court appointed an examiner and confirmed a plan of reorganization for Utex on March 18, 1988. The settlement agreement between ANR and Utex regarding the adversary proceeding was not subject to change or modification by the plan of reorganization.

*Discussion*

The issue before the court is whether ANR has standing to bring all causes of action alleged in the present case.[2] A resolution of this issue depends on whether ANR's alleged causes of action are personal claims of ANR or claims of the Utex bankruptcy estate. ANR contends that these causes of action are not property of the Utex estate but are personal claims of ANR. As a result, ANR asserts that it is the only entity that has standing to seek the damages and remedies ANR has requested in this action.

*Property of the Estate:*

Section 541 of the Bankruptcy Code broadly defines the property of an estate. The estate includes all legal and equitable interests the debtor had in property as of the filing of the bankruptcy petition. 11 U.S.C. § 541(a)(1). The bankruptcy estate expansively includes all kinds of tangible and intangible property, including causes of action. H.R.Rep. No. 595, 95th Cong., 1st Sess. 367–68 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 82–83 (1978), U.S. Code Cong & Admin.News 1978, p. 5787. Generally, non-bankruptcy law determines whether a debtor has an interest in property. *See Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979) (state law defined property rights

become assets of the estate). Nevertheless, the ultimate determination of what constitutes section 541 property is a federal question. H.R.Rep. No. 595, 95th Cong., 2d Sess. 82–83 (1978), 1978 U.S.Code Cong. & Admin.News 5787, 5868–69.

Generally, under Utah law a corporation is the proper party to assert claims against its insiders for corporate mismanagement, misappropriation of corporate assets, and breach of fiduciary duty to the corporation. *See Morris v. Ogden State Bank,* 84 Utah 127, 28 P.2d 138, 143 (1934); *see also Hoggan & Hall & Higgins, Inc. v. Hall,* 18 Utah 2d 3, 414 P.2d 89 (1966); *Kamas Securities Co. v. Taylor,* 119 Utah 241, 226 P.2d 111 (1950). It is clear that rights of action against officers, directors, and shareholders of a corporation arising from a breach of fiduciary duty, which can be prosecuted by the corporation directly or shareholders derivatively before bankruptcy, become property of the estate. *Pepper v. Litton,* 308 U.S. 295, 306–07, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939); *Koch Refining v. Farmers Union Central Exchange, Inc.,* 831 F.2d 1339, 1343 (7th Cir.1987); *Delgado Oil Co., Inc. v. Torres,* 785 F.2d 857, 860 (10th Cir.1986); *Mitchell Excavators, Inc. by Mitchell v. Mitchell,* 734 F.2d 129, 131 (2d Cir.1984); *In re Mortgage-America Corp.,* 714 F.2d 1266, 1276 (5th Cir.1983). The Tenth Circuit has generally observed that the bankruptcy estate includes "any actions that a debtor corporation may have to recover damages for fiduciary misconduct, mismanagement or neglect of duty." *Delgado,* 785 F.2d at 860.

The trustee of the bankruptcy estate succeeds to the right to bring an action for corporate mismanagement against directors or officers of the debtor corporation for the benefit of all creditors of the estate. *Delgado,* 785 F.2d at 860. Because claims for damages from corporate mismanagement are derivative in nature, such claims are enforceable solely by the

---

**2.** The doctrine of standing requires that a claimant have a personal stake in the outcome of a controversy adequate to ensure that the matter will be presented in an adversarial context and will be amenable to judicial resolution. *See*

*Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); *Sierra Club v. Morton,* 405 U.S. 727, 731–32, 92 S.Ct. 1361, 1364–65, 31 L.Ed.2d 636 (1972).

trustee and may not be asserted by any one creditor. *Carlton v. BAWW, Inc.,* 751 F.2d 781, 785 (5th Cir.1985); *Mitchell,* 734 F.2d at 131; *MortgageAmerica,* 714 F.2d at 1272; *Dana Molded Products, Inc. v. Brodner,* 58 B.R. 576, 580-81 (N.D.Ill. 1986).

Nevertheless, these principles do not preclude actions against corporate insiders by creditors who have been specifically harmed by their wrongful conduct. Such "personal claims" are not part of the bankruptcy estate. *See Koch Refining,* 831 F.2d at 1348-50, *but cf. Delgado,* 785 F.2d at 861.[3] "A cause of action is 'personal' if the claimant himself is harmed and no other claimant or creditor has an interest in the cause." *Id.* at 1348.

Whether ANR is the proper party to bring the present action depends on whether or not the action is a personal claim belonging only to ANR. The bankruptcy court in Nevada has aptly described the difference between claims that are personal to specific creditors and those claims that are general and accrue to the benefit of all creditors:

> Where the injury alleged is primarily to the corporation, and is injury to the plaintiff creditor only insofar as it decreases the assets of the corporation to which he must look for satisfaction of his debt, then the suit is for a tort suffered by the corporation, and properly brought by the trustee; if there is a special damage to the creditor suing, not common to other creditors, then it is a personal creditor action which the trustee may not pursue.

*In re Western World Funding, Inc.,* 52 B.R. 743, 775 (Bankr.D.Nev.1985). To determine whether a particular cause of action accrues specifically to a claimant or generally to the corporation, a court must decide whether the injury is peculiar and personal to the claimant or general and common to the corporation and other creditors. *Koch Refining,* 831 F.2d at 1349.

There is some dispute regarding whether a bankruptcy estate includes claims against insiders based on alleged fraudulent conduct in mismanaging corporate assets or whether these claims are "personal" claims of certain creditors. A difference of opinion exists as to whether or not causes of action based on theories of alter ego, fraud, or federal and state racketeering violations fall within the scope of section 541.

### 1. *Alter Ego Remedy*

ANR's complaint seeks an alter ego remedy by requesting the court to hold the defendants personally liable for the debts owed to ANR by Utex.[4] The complaint contains allegations that Utex was organized and operated as the alter ego of defendants Kenneth Chattin and Dorothy Hansen, in particular. Complaint, ¶ 10. At all material times, Kenneth Chattin was the sole shareholder of Utex. In general, ANR contends that the defendants operated Utex for their personal benefit and advantage.

■ The alter ego doctrine is used to pierce the corporate veil and thereby displace the basic principle that a corporation is a separate legal entity from its shareholders. In Utah, once certain evidentiary requirements are shown, the alter ego theory allows the legal distinction between a corporation and its shareholders, officers and directors to be disregarded and personal liability imposed on corporate insiders.[5]

Whether an alter ego remedy is a personal right of a creditor is a question provok-

---

**3.** Arguably, the *Delgado* case supports the proposition that certain personal claims of a creditor can be grouped among claims for corporate mismanagement which are property of the bankruptcy estate. *See Delgado,* 785 F.2d at 861. However, this court believes that the Tenth Circuit did not intend to hold that personal claims of creditors are property of the debtor's estate. The *Delgado* court noted that claims for fraud are beyond the purview of bankruptcy proceedings. *Id.* at 859 n. 4.

**4.** The doctrine of alter ego is an equitable remedy rather than a substantive cause of action. *See Matter of S.I. Acquisition, Inc.,* 817 F.2d 1142, 1152 n. 11 (5th Cir.1987).

**5.** *See generally, Messick v. PHD Trucking Service, Inc.,* 678 P.2d 791 (Utah 1984); *Norman v. Murray First Thrift & Loan Co.,* 596 P.2d 1028 (Utah 1979); *Hansen v. Green River Group,* 748 P.2d 1102 (Utah App.1988); *Colman v. Colman,* 743 P.2d 782 (Utah App.1987).

ing differing opinions. *Cf. Koch Refining v. Farmers Union Central Exchange, Inc.,* 831 F.2d 1339 (7th Cir.1987) *with In re Ozark Restaurant Equipment Co.,* 816 F.2d 1222 (8th Cir.1987); *see also Matter of S.I. Acquisition, Inc.,* 817 F.2d 1142 (5th Cir.1987); *In re R.H.N. Realty Corp.,* 84 B.R. 356, 360 (Bankr.S.D.N.Y.1988); *In re Vermont Toy Works, Inc.,* 82 B.R. 258, 300–09 (Bankr.D.Vt.1987); *In re Morgan–Staley Lumber Co., Inc.,* 70 B.R. 186 (Bankr.D.Or.1986); *In re Western World Funding, Inc.,* 52 B.R. 743 (Bankr.D.Nev. 1985).

To determine whether an alter ego remedy is a personal claim of a creditor or property of the estate, we should first review Utah law on the subject. The Utah Supreme Court has observed that the alter ego doctrine is generally invoked when a creditor seeks redress against a corporate shareholder or insider who has used the corporate entity as a shield to defraud the creditor. *Messick v. PHD Trucking Service, Inc.,* 678 P.2d 791, 793 (Utah 1984). To disregard the corporate entity under the equitable alter ego doctrine,

> there must be a concurrence of two circumstances; (1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, viz., the corporation is, in fact, the alter ego of one or a few individuals; and (2) the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow.

*Norman v. Murray First Thrift & Loan Co.,* 596 P.2d 1028, 1030 (Utah 1979), *accord Messick,* 678 P.2d at 794. Certain factors deemed significant, but not conclusive, in justifying the need to pierce the corporate veil include:

> (1) undercapitalization of a one-man corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant stockholder; (5) nonfunctioning of other officers or directors; (6) absence

of corporate records; (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders; and (8) the use of the corporate entity in promoting injustice or fraud.

*Colman v. Colman,* 743 P.2d 782, 786 (Utah App.1987) (citations omitted).

Under Utah law there appears to be no prohibition against a corporation seeking an alter ego remedy against itself. Some courts have observed that since a corporation has a separate legal existence, it may pierce its own corporate veil and hold those insiders accountable for corporate mismanagement.[6] *Matter of S.I. Acquisition, Inc.,* 817 F.2d 1142, 1152 (5th Cir.1987); *Western World Funding,* 52 B.R. 743, 783 (Bankr.D.Nev.1985).

In sum, Utah law allows the remedy of alter ego to belong to either a debtor-corporation or to a creditor. The ultimate determination of whether this remedy is part of the debtor's estate depends on whether placing this right of action within the estate will further federal bankruptcy policies.

The Bankruptcy Code's ultimate goal is to balance the equities and interests of all affected parties involved in a bankruptcy case. *In re Alpa Corp.,* 11 B.R. 281, 289 (Bankr.D.Utah 1981). Bankruptcy law permits the trustee to recover property on behalf of all creditors for equitable distribution and to avoid multiple liability of the debtor to separate creditors. Thus, section 541 should be construed broadly in an effort to further the fundamental bankruptcy policy of equitable distribution to all creditors.

In accordance with these goals, provisions of the Bankruptcy Code should be construed so as to prevent one creditor from recovering a fund rightfully belonging to other creditors similarly situated. Because a successful alter ego action results in a finding that the defendants are personally liable for all corporate debts, the

---

**6.** Nevertheless, corporate insiders who so dominate the corporation as to constitute an alter ego are not likely to bring an action to determine their own liability for corporate debts.

*Western World Funding,* 52 B.R. at 783. The ideal entity to bring such an alter ego action is a trustee in bankruptcy. *Id.*

bankruptcy trustee is logically the proper party to bring an alter ego right of action in the first instance. It would be contrary to fundamental bankruptcy policies to prohibit a bankruptcy trustee from asserting an alter ego remedy for the benefit of all creditors.[7]

Therefore, in view of fundamental bankruptcy policies, it is appropriate to categorize an action based on the alter ego doctrine as property of the estate. *Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339 (7th Cir.1987); *S.I. Acquisition*, 817 F.2d at 1153; *Vermont Toy Works*, 82 B.R. at 300–09; *Western World Funding*, 52 B.R. at 776–85; *but cf. Ozark Restaurant*, 816 F.2d at 1224–30.

■ This court concludes that an alter ego right of action against shareholders of Utex is property of the Utex estate. The trustee is the proper party to seek an alter ego remedy against the debtor's shareholders. If the action is successful, the trustee can recover assets for the benefit of all creditors. In view of the bankruptcy policy of equitable distribution among creditors, the trustee should be given preference in bringing an alter ego claim on behalf of the creditors. Nevertheless, a sole creditor may seek an alter ego remedy if the trustee abandons the claim.[8]

In the present case, ANR has not convinced the court that the Utex examiner has formally abandoned the estate's alter ego remedy. Until such a showing is made, the court will dismiss without prejudice all causes of action in the complaint predicated on the alter ego doctrine. ANR's breach of contract and breach of fiduciary duty claims for relief are primarily based on allegations of alter ego. These claims arise from contractual obligations of the Restated Participation Agreement entered into between Utex and ANR. The court will dismiss the first and second claim for relief in ANR's complaint because any liability for these claims depends upon a finding of alter ego.

### 2. *Theft, Conversion and Misrepresentation*:

ANR's complaint contains claims for relief based on allegations of theft, conversion and misrepresentation. ANR alleges that these claims arise from the defendants' obtaining money from ANR by fraudulent misrepresentations. ANR contends that the defendants directed and caused the theft and conversion of ANR's proportionate share of the joint account by issuing fraudulent joint interest billings and cash-calls.

ANR argues that these tort claims are personal claims because they involve direct injuries to ANR and not to other creditors. In contrast, the defendants argue that any damage resulting from their conduct, if shown, was common to other creditors or accrued to Utex as a corporation. *See generally Dana Molded Prods., Inc. v. Brodner*, 58 B.R. 576 (N.D.Ill.1986).

---

**7.** *See Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293 (1941).

The Supreme Court in *Sampsell* relied on fundamental bankruptcy policies in implicitly approving a bankruptcy referee's order disregarding the corporate entity of a corporation closely associated with an individual debtor. Writing for the Court, Justice Douglas recognized the bankruptcy theme of equality of distribution and the power of the bankruptcy court to subordinate claims and adjudicate equities among creditors. *Sampsell*, 313 U.S. at 219, 61 S.Ct. at 907.

In *Sampsell*, the bankruptcy referee had found that the bankrupt, Mr. Downey, had formed a sham corporation to conceal assets and thus ordered that the property of the sham corporation be merged into property of the Downey estate. *Id.* at 216–17, 61 S.Ct. at 905–

06. The Supreme Court reviewed whether a creditor of the corporation had priority to assets liquidated from the corporation. The Court denied the creditor priority status. *Id.* at 220–21, 61 S.Ct. at 907–08. The *Sampsell* case illustrates the implicit fairness of having the trustee request the bankruptcy court to pierce a corporate veil of a sham corporation in order to insure equality of distribution among creditors of both the corporation and the shareholders.

**8.** Utah law recognizes that a creditor can seek an alter ego remedy. *Messick*, 678 P.2d at 793. Such redress by a creditor is possible and consistent with bankruptcy policy if the trustee declines to seek an alter ego remedy and thus abandons the right of action. *See* 11 U.S.C. § 554; *see also Koch Refining*, 831 F.2d at 1346 n. 9.

Generally, a corporate officer or director is personally liable for injuries caused by his fraud, conversion or other intentional tort. *See* 3A *Fletcher Cyc. Corp.* §§ 1140, 1143 (1986). A corporate officer cannot escape liability for a fraudulent act on the basis that he was acting on behalf of the corporation. *Id.* § 1143 at 309. Acts of theft, conversion and misrepresentation by a corporate insider cause direct and personal injuries to a creditor. *See Cumberland Oil Corp. v. Thropp,* 791 F.2d 1037 (2d Cir.1986), *cert. denied* 479 U.S. 950, 107 S.Ct. 436, 93 L.Ed.2d 385 (1986). Thus, claims for theft, conversion and misrepresentation against a corporate insider are personal claims of a creditor and not property of the bankruptcy estate. *Cumberland Oil Corp.,* 791 F.2d at 1043; *Begier v. Price Waterhouse,* 81 B.R. 303, 305–06 (E.D.Pa.1987).

The court concludes that ANR has standing to bring its causes of action based on theft, conversion and misrepresentation. ANR's claims based on these torts involve allegations of direct injuries to ANR alone and no other creditor. Although the defendants may have tortiously injured other creditors in a similar manner, it is possible for ANR to show that the defendants specifically directed certain episodes of theft, conversion and misrepresentation at ANR and thereby caused personal losses to ANR. Nevertheless, proof of these claims is another matter. ANR will have the burden to prove all elements of theft, conversion and misrepresentation by a preponderance of the evidence.

### 3. *Constructive Trust:*

ANR requests that the court impose a constructive trust on all money and derivative assets that the defendants allegedly fraudulently obtained from ANR and other working interest owners. ANR also requests that the court require an accounting from the defendants in order to determine the flow of money.

A constructive trust or equitable lien is an equitable remedy to claims of theft, conversion and misrepresentation. However, the court sees no basis for invoking this remedy on behalf of all working interest owners. Depending upon proof of these claims, the court will deem it appropriate to invoke this equitable remedy in regard to the proportionate amount of money or assets fraudulently obtained from ANR only.

The court has also taken judicial notice of the fact that the Utex examiner has performed a thorough accounting of Utex's books and records. The court recognizes, however, that it may be necessary to require the defendants to submit to audits concerning their individual financial holdings.

### 4. *RICO and RICE Claims:*

ANR has pled claims under federal and state racketeering laws based upon an alleged scheme to defraud perpetrated by the defendants.[9] In support of these racketeering claims, ANR specifically alleges that the defendants perpetrated a pattern of indictable mail fraud by mailing fraudulent joint interest billings and cash-call invoices to ANR on at least the following dates: February 5, 1986; March 24, 1986; April 17, 1986; May 2, 1986; May 22, 1986 and July 14, 1986. ANR contends that each of these predicate acts of mail fraud constitutes an episode of racketeering activity causing distinct injury to ANR.

Courts recognize that a creditor lacks standing to bring a RICO claim against corporate fiduciaries where the creditor is harmed only indirectly and has sustained an injury common with other creditors. *Dana Molded Prods., Inc. v. Brodner,* 58 B.R. 576, 580 (N.D.Ill.1986); *see also Warren v. Manufacturers Nat'l Bank,* 759 F.2d 542 (6th Cir.1985); *Carter v. Berger,* 777 F.2d 1173 (7th Cir.1985); *Grant v. Union Bank,* 629 F.Supp. 570

---

**9.** ANR's sixth claim for relief is based upon violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. ANR's seventh claim for relief is based on violations of Utah's Pattern of Unlaw-ful Activity Act ("RICE"), Utah Code Ann. §§ 76–10–1601 to –09 (1987), formerly known as the Utah Racketeering Influence and Criminal Enterprise Act.

(D.Utah 1986). In the present case, ANR has alleged direct injuries not common with other creditors. Therefore, ANR has alleged sufficient facts to show the requisite standing to bring its racketeering claims.

 However, ANR's pleading of its racketeering claims under RICO and RICE are deficient in another regard. Although ANR has carefully pled specific factual allegations of mail fraud, ANR has failed to specify the role of each individual defendant in the fraudulent scheme. In order to comply with the specificity requirements imposed by Rule 9(b) of the Federal Rules of Civil Procedure in the context of a RICO or RICE claim, each of the defendants must be apprised of the specific allegations directed against that defendant. *Huntsman–Christensen Corp. v. Mountain Fuel Supply Co.*, No. C86–0530G, slip op. at 8 (Nov. 24, 1986) (memorandum decision and order) [available on WESTLAW, 1986 WL 15400]. As pointed out in the *Huntsman–Christensen* case, "[t]he potential of unwarranted damage to reputation is too great to permit an indiscriminate lumping of such individual defendants...." *Id.* (citations omitted). Moreover, the RICO and RICE statutes are premised on criminal conduct and pleadings must be sufficiently particular to show the indictability of each alleged offender. *Grant v. Union Bank*, 629 F.Supp. 570, 576 (D.Utah 1986).

Accordingly, the court deems it appropriate to dismiss ANR's RICO and RICE claims without prejudice and with leave to amend. ANR fails to specify what particular indictable offense each defendant is allegedly culpable of and, thus, fails to provide the requisite particularity critical to a RICO or RICE claim. The court concludes that it is not sufficient for ANR to allege that the defendants, collectively, violated federal mail fraud and other offenses.

### Conclusion

Based upon the foregoing discussion, the court concludes that ANR lacks standing in bringing its breach of contract and breach of fiduciary duty claims for relief because these claims are predicated on the alter ego doctrine. Although a very close question, the court concludes that an alter ego remedy is property of the bankruptcy estate and should be brought by the bankruptcy trustee.

The court further concludes that ANR has standing to assert its personal claims for theft, conversion and misrepresentation. If appropriate, ANR may seek a constructive trust and accounting regarding money or assets fraudulently obtained from ANR. Nevertheless, ANR has the burden to prove all elements of each claim.

Finally, the court dismisses ANR's RICO and RICE claims without prejudice and with leave to amend. These racketeering claims, as presently pled, fail to specify what indictable offense each defendant is culpable of.

Accordingly, IT IS HEREBY ORDERED that ANR's first, second, sixth, and seventh claims for relief are dismissed without prejudice. This decision shall suffice as the court's ruling on this matter and counsel need not prepare a formal order.