2000 UT 102

**Rick H. WARNER, Plaintiff and Appellant,**

v.

**DMG COLOR, INC., a Utah corporation, Dick M.G. Warner, Vicki Lynn Warner, Digital Media Group, L.C., a limited liability company, Defendants and Appellees.**

No. 990455.

Supreme Court of Utah.

Dec. 29, 2000.

James G. Swensen, Jr., Salt Lake City, for plaintiff.

Herschel J. Saperstein, Steven W. Call, Melissa H. Bailey, Salt Lake City, for defendants.

DURHAM, Justice:

## INTRODUCTION

¶ 1 Rick H. Warner ("plaintiff") appeals from the trial court's order granting a motion to dismiss presented by defendants Dick M.G. Warner, Vicki Lynn Warner, and Digital Media Group, L.C. ("Digital"). In his complaint, plaintiff raised three causes of action, all of which he asserted were both direct and derivative claims. Here, plaintiff challenges the trial court's dismissal, arguing that his right to derivatively assert the claims he pled survived the sale of such claims by the bankruptcy trustee, or alternatively, that he can directly assert such claims against Dick Warner, Vicki Warner, and Digital because he was a minority shareholder in a closely held corporation. Plaintiff also challenges the trial court's award of attorney fees. Additionally, Dick Warner, Vicki Warner, and Digital request reasonable attorney fees and costs related to this appeal.

## BACKGROUND

¶ 2 Plaintiff and Dick Warner formed DMG Color, Inc. ("DMG"), with each being a director and a fifty percent shareholder. Thereafter, DMG redeemed all of its shares of capital stock owned by plaintiff in exchange for cash and an installment note. Ultimately, DMG defaulted and plaintiff brought suit to collect on the note. Plaintiff received a judgment for $200,588.51 plus interest and costs and was subsequently granted all of the rights of a shareholder in DMG, except voting rights, until the judgment was paid in full.

¶ 3 Approximately one year later, plaintiff attempted to collect the judgment. On July 27, 1994, DMG filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, which was later converted to a Chapter 7 liquidation. When plaintiff offered to purchase all claims and potential causes of action of DMG, including those against Dick Warner, from the bankruptcy estate, the trustee filed a motion for approval of the sale of such items. Notice of the trustee's intent to sell these items and of a hearing on the trustee's motion for an order approving the sale was served upon all interested parties, including plaintiff. Following this, the trustee conducted an auction which plaintiff and Dick Warner attended. Ultimately, Dick Warner was the highest bidder.

¶ 4 On January 13, 1998, the bankruptcy court entered an order authorizing the trustee to sell the claims and potential causes of action of DMG to Dick Warner for $4500. On January 27, 1998, the trustee transferred these items to Digital, a company formed by Dick Warner, Vicki Warner, and a designee of Dick Warner.

¶ 5 On November 17, 1998, plaintiff instituted this suit in state court against defendants alleging, both derivatively and directly: (1) conversion of corporate assets; (2) misappropriation of corporate opportunity; and (3) fraudulent transfer and conveyance of corporate assets. Dick Warner, Vicki Warner, and Digital moved to dismiss plaintiff's action. The trial court granted this motion, reasoning that "[a]s a result of the sale ordered by the United States Bankruptcy Court, the claims against the Defendants do not belong to the Plaintiff." Moreover, the trial court found that

> [t]he Defendants should be awarded reasonable attorneys fees pursuant to Utah Code Ann. § 78–27–56 because plaintiff's alleged claims were without merit and not asserted in good faith based upon the undisputed facts that the claims had been sold by the bankruptcy trustee to the Defendants in compliance with the order of the United States Bankruptcy Court.

This appeal followed.

## STANDARD OF REVIEW

¶ 6 The trial court in the instant case did not specifically state the grounds upon

which it granted the motion to dismiss made by Dick Warner, Vicki Warner, and Digital. However, after a full recitation of all the previous proceedings in the bankruptcy court, the trial court stated, "As a result of the sale ordered by the United States Bankruptcy Court, the claims against the defendants do not belong to the Plaintiff." The logical inference from this statement is that the court was dismissing the complaint for failure to state a claim upon which relief could be granted. Because the propriety of a dismissal under Utah Rule of Civil Procedure 12(b)(6) is a question of law, we give the trial court's ruling no deference and review it under a correctness standard. *See Whipple v. Am. Fork Irrigation Co.*, 910 P.2d 1218, 1220 (Utah 1996).

## ANALYSIS

### I. APPROPRIATENESS OF STATE PROCEEDING

#### A. Bankruptcy Scheme

¶ 7 To place plaintiff's challenges in the appropriate context, we first provide a general summary of the relevant bankruptcy procedures and principles. Pursuant to 28 U.S.C. § 1334, "the [federal] district court shall have original and exclusive jurisdiction of all cases under title 11," of the Bankruptcy Code. 28 U.S.C. § 1334(a) (1993). Additionally, that court "shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." *Id.* § 1334(e) (Supp.2000). "Property of the estate includes causes of action held by the debtor against third parties as of case commencement." 9A Am.Jur.2d *Bankruptcy* § 1107 (1999) (footnote omitted).

¶ 8 Once a bankruptcy petition is filed, the property of the estate becomes "subject to the control and administration of the trustee." *Id.* § 1087. When administering the estate, "[o]ne of the principal duties of a Chapter 7 trustee is to collect the property of the estate and reduce it to money, and to close the estate as expeditiously as is compatible with the best interests of the parties in interest." 9 Am.Jur.2d *Bankruptcy* § 317 (1999). One method to accomplish

this duty is to sell the property in the estate. *See* 9B Am.Jur.2d *Bankruptcy* § 1518 (1999). "The trustee ... is granted broad powers ... with respect to the ... sale ... of property of the estate.... Generally, transactions outside the ordinary course of business require notice and an opportunity for a hearing if there are any objections." *Id.* (footnotes omitted); *see also* Fed. R. Bankr.P. 6004(a), (e). Objections to a proposed sale "shall be filed and served not less than five days before the date set for the proposed action or within the time fixed by the court." *Id.* 6004(b). "Failure to timely file an objection ... can result in a waiver of the objection." 9B Am.Jur.2d *Bankruptcy* § 1534.

¶ 9 Upon completion of the sale, the regular practice of bankruptcy courts is to issue an order confirming the sale. *See id.* § 1554. Such orders constitute final orders. *See* 9E Am.Jur.2d *Bankruptcy* § 3495 (2000). Thus, the appropriate method to challenge such a sale is by appeal, not collateral attack.

¶ 10 The principles that underlie bankruptcy law are relevant to its application. In particular, "[a] principal function of bankruptcy law is to determine and implement in a single · collective proceeding the entitlements of all concerned." 9 Am. Jur.2d *Bankruptcy* § 2. Bankruptcy law thus "contemplates participation [in a bankruptcy proceeding] by any party having an interest in any issue relating to the debtor." *Id.* § 1. Stated differently, "[a] bankruptcy case operates as a collective execution on behalf of creditors on all the assets of the debtor ... [that] replaces individual collection remedies." *Id.* § 2. This collective execution increases "the aggregate pool of assets [available to satisfy the creditor's claims] by prohibiting a disadvantageous, piecemeal liquidation of the debtor's assets," *id.,* and "prevents the inequity of one creditor recovering more on its debt than the remaining similarly situated creditors can recover on theirs," *Delgado Oil Co. v. Torres,* 785 F.2d 857, 861 (10th Cir.1986). ·In sum, bankruptcy law seeks to accomplish three goals: (1) "equitable distribution of the debtor's assets among his or her creditors"; (2) "relieving the honest debtor from

the weight of oppressive indebtedness to permit the debtor to start afresh"; and (3) "expeditious and economic administration of cases under the Bankruptcy Code." 9 Am. Jur.2d *Bankruptcy* § 5.

### B. Substantive Claims

¶ 11 Plaintiff's theory depends on the notion that the proceeding in the bankruptcy court, including the sale of DMG's claims by the trustee, did not include the claims he asserted in the trial court in the instant action. As to plaintiff's conversion and misappropriation of corporate assets claims, we do not agree; regarding the fraudulent transfer claim, we find that the statute of limitations ran before plaintiff's state court action was filed.

### 1. Derivative and Direct Claims

¶ 12 Derivative actions attempt to enforce rights belonging to a corporation. *See Aurora Credit Servs., Inc. v. Liberty W. Dev., Inc.,* 970 P.2d 1273, 1280 (Utah 1998). Claims of mismanagement, breach of fiduciary duties, and appropriation or waste of corporate opportunities are claims that the corporation has been injured. Accordingly, the cause of action belongs to the corporation and shareholders may sue only on its behalf. *See id.* (quoting *Richardson v. Arizona Fuels Corp.,* 614 P.2d 636, 639 (Utah 1980)). Even though shareholders may suffer indirect injuries due to fraudulent acts on the part of corporate officers, they generally do not have a direct cause of action for such injuries. *See id.; Richardson,* 614 P.2d at 639–40.

¶ 13 Direct actions, by contrast, require a shareholder to show that he or she was injured in a manner distinct from the corporation. *See Aurora,* 970 P.2d at 1280. In *Richardson,* the court defined a direct action, noting that a plaintiff as a stockholder and an individual is injured, and the corporation is not, " 'as where the action is based on a contract to which [he or she] is a party, or on a right belonging severally to [him or her], or on a fraud affecting [him or her] directly.' " 614 P.2d at 639 (quoting 13 Fletcher, *Cyclopedia of the Law of Private Corporations* § 5911 (1970)).

¶ 14 The case of *ANR Ltd., Inc. v. Chattin,* 89 B.R. 898 (Bankr.D.Utah 1989), is illustrative. In *ANR,* plaintiffs alleged that defendants assisted Utex, defendants' corporation, in mismanaging a joint account set up specifically to deal with disbursements and receivables, including those from plaintiffs, in a complicated business transaction involving hundreds of oil and gas leases, oil and gas wells, a gas processing plant, and easements and rights-of-way. *See id.* at 900. The joint account was set up as part of a Restated Participation Agreement that itself incorporated two operative documents regarding how the corporation was to fulfill its fiduciary duties to, among others, plaintiffs. *See id.* at 899–900.

¶ 15 Correctly stating that "[g]enerally, under Utah law a corporation is the proper party to assert claims against its insiders for corporate mismanagement, misappropriation of corporate assets, and breach of fiduciary duty to the corporation," *id.* at 901, the court observed that "these principles do not preclude actions against corporate insiders by creditors who have been *specifically harmed* by their wrongful conduct. Such 'personal claims' are not part of the bankruptcy estate." *Id.* at 902 (emphasis added). Thus, *ANR* involved claims of a creditor that stemmed from a particular contract between the creditor and the corporation, not from the creditor's status as a creditor. Because the plaintiffs were situated differently from other creditors, their claim was direct. In contrast, in this case plaintiff's conversion and misappropriation claims stem solely from his status as a corporate shareholder—the mark of a derivative claim.

### 2. Conversion and Misappropriation Claims

¶ 16 In the trial court, plaintiff alleged the following causes of action: (1) conversion of corporate assets; (2) misappropriation of corporate assets; and (3) fraudulent transfer and conveyance of corporate assets. The conversion and misappropriation claims in plaintiff's complaint contain no allegations of a harm specific to plaintiff, as opposed to harms affecting other shareholders or creditors of the corporation. Plaintiff's allegations regarding these two claims

in the trial court therefore constitute derivative claims, not direct ones. *See Bauer v. Sweeny,* 964 F.2d 305, 306–07 (4th Cir.1992); *Delgado,* 785 F.2d at 860; *ANR,* 89 B.R. at 901; *Aurora,* 970 P.2d at 1280; *Richardson,* 614 P.2d at 639. Thus, it is the bankruptcy estate, not plaintiff, that possesses the right to pursue these actions. *See Delgado,* 785 F.2d at 860. Although plaintiff does not challenge this statement of the law, he attempts to limit its application by arguing that once the claims were sold, they were effectively "abandoned" by the trustee and could be brought in the state trial court. Again, we disagree.

¶ 17 As discussed above, the bankruptcy trustee has broad discretion to liquidate the estate in whatever manner necessary to obtain the best possible settlement for the estate's creditors. In keeping with this obligation, the trustee in the bankruptcy court noticed a sale of the property in DMG's estate, including any "claims and potential causes of action" regarding any "alleged misappropriation of [DMG's] business, goodwill and customer base." Plaintiff received notice of the sale, and, in fact, participated in it. Neither before the sale, nor after, did he enter any objection in the bankruptcy court regarding the sale, and he was not the ultimate purchaser of the claims.

¶ 18 The sale effectively cut off plaintiff's right as a shareholder to assert his conversion and misappropriation claims derivatively. *See Bauer,* 964 F.2d at 308 ("Derivative rights of shareholders are lost after claims are sold."). Moreover, to further the important policies of bankruptcy law noted above, including treating all creditors equally, administering the estate expeditiously, and giving the debtor an opportunity for a fresh start, this disposition of DMG's potential conversion and misappropriation claims by sale must be final. If plaintiff, in his capacity as a *creditor,* wanted to benefit from DMG's claims and potential causes of action, his appropriate course of action would have been to file a notice of claim in the bankruptcy court and, if not satisfied with the sale, to challenge it through an appeal. Instead, plaintiff has in essence attempted to challenge the sale through this suit in state trial court. This he cannot do. To hold otherwise would defeat the intent behind the bankruptcy system. Because plaintiff's conversion and misappropriation claims derived from DMG's claims, they were extinguished with the sale of those claims.

¶ 19 Alternatively, plaintiff argues that he can assert the claims alleged in the instant action because of our holding in *Aurora* "that a court may allow a minority shareholder in a closely held corporation to proceed directly against corporate officers." 970 P.2d at 1281. Plaintiff asserts that it makes no difference under *Aurora* whether his claims are derivative or direct. Actually, regarding his conversion and misappropriation claims, it makes all the difference in the world. The nature of plaintiff's claims determine whether they were part of the bankruptcy estate or separate from it. Given the derivative nature of his conversion and misappropriation claims, they were clearly part of the bankruptcy estate. *See ANR,* 89 B.R. at 901. When the claims were sold, nothing remained upon which plaintiff could sue. In *Aurora,* there was no intervening bankruptcy proceeding, and therefore, no transfer of the plaintiff's claim from the general realm of enforceability by anyone with an interest into the bankruptcy estate where the claim could only be enforced by the trustee. Thus, *Aurora* has no application to plaintiff's situation.

### 3. Fraudulent Conveyance or Conversion Claim

¶ 20 While plaintiff's fraudulent conveyance or transfer claim may not have been part of the bankruptcy estate because "fraudulent transfer claims have long belonged to a transferor's creditors," *In re Cybergenics Corp.,* 226 F.3d 237, 241 (3d Cir.2000), (involving Chapter 11, not Chapter 7, of the Bankruptcy Code), pursuant to Utah Code Ann. § 25–6–10 (1998), the maximum amount of time for bringing such a claim is four years.[1] Defendant DMG filed a petition

---

**1.** The statute states:
 A claim for relief or cause of action regarding a fraudulent transfer or obligation under this chapter is extinguished unless action is brought:

with the United States Bankruptcy Court for the District of Utah for reorganization under Chapter 11 of the Bankruptcy Code on July 27, 1994. Plaintiff's complaint in state court was filed on approximately November 17, 1998, over four years later. Plaintiff has presented no argument regarding the tolling of the applicable statute of limitations in this action. While plaintiff purported to challenge defendants' statute of limitations argument in the trial court in opposing defendants' motion to dismiss, the only specific argument concerned plaintiff's conversion claim, which we have addressed on other grounds. Accordingly, we hold that plaintiff's claim regarding fraudulent transfer or conveyance was not timely filed.

## II. ATTORNEY FEES AND COSTS

¶ 21 Plaintiff also challenges the trial court's award of attorney fees to defendants. Under Utah Code Ann. § 78–27–56 (1996), "[i]n civil actions, the court shall award reasonable attorney's fees to a prevailing party if the court determines that the action ... was without merit and not brought ... in good faith." "Whether attorney fees are recoverable in an action is a question of law, which we review for correctness." *Soft-solutions v. Brigham Young Univ.*, 2000 UT 46, ¶ 12, 1 P.3d 1095 (citing *Valcarce v. Fitzgerald*, 961 P.2d 305, 315 (Utah 1998)). In contrast, it is within the discretion of the trial court to determine whether an action is asserted in bad faith, and we therefore review such a determination under the clearly erroneous standard. *See Canyon Country Store v. Bracey*, 781 P.2d 414, 421 (Utah 1989); *Jeschke*, 811 P.2d at 204.

¶ 22 Claims without merit are those which are "frivolous" or "of little weight or importance having no basis in law or fact." *Cady v. Johnson*, 671 P.2d 149, 151 (Utah 1983) (internal quotation marks omitted). Based upon our review of the relevant bankruptcy law, it is clear that plaintiff's ability to

assert the claims he did below, relating to conversion and misappropriation, were cut off by the bankruptcy proceeding and the sale of such claims. Additionally, his fraudulent transfer claim was barred by the applicable statute of limitations. If he was dissatisfied with the result of the sale, his only recourse was clearly in the federal bankruptcy proceeding. Plaintiff's action in the trial court had no basis in law, and was thus without merit.

¶ 23 Moving to the issue of bad faith, the trial court concluded that plaintiff acted in bad faith in pursuing his action before the trial court because the claims he asserted therein "had been sold by the bankruptcy trustee to Defendants in compliance with the order of the United States Bankruptcy Court." This fact, combined with the evidence before the trial court showing that plaintiff knew of the sale and participated without objection in it, was certainly sufficient to raise the inference of bad faith on plaintiff's part. We therefore conclude that the trial court's finding that plaintiff acted in bad faith was not clearly erroneous. Thus, the trial court's award of attorney fees is affirmed.

¶ 24 We now turn to the request made by Dick Warner, Vicki Warner, and Digital for attorney fees and costs associated with this appeal. Under Utah Rule of Appellate Procedure 33, a party is entitled to attorney fees when an "appeal ... is ... frivolous.... [A] frivolous appeal ... is one that is not grounded in fact, not warranted by existing law, or not based on a good faith argument to extend, modify, or reverse existing law." Utah R.App. P. 33(a), (b). We have already found that plaintiff's claims asserted below were frivolous, and we find that they are also frivolous on this appeal. Additionally, under Utah Rule of Appellate Procedure 34, "if a judgment is affirmed, costs shall be taxed against appellant." Utah

(1) under Subsection 25–6–5(1)(a), within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant;

(2) under Subsection 25–6–5(1)(b) or 25–6–6(1), within four years after the transfer was made or the obligation was incurred; or
(3) under Subsection 25–6–6(2), within one year after the transfer was made or the obligation was incurred.
Utah Code Ann. § 25–6–10.

R.App. P. 34(a). Accordingly, we grant appellees' request for attorney fees and costs and remand to the trial court for a determination of the amount of such fees and costs.

## CONCLUSION

¶ 25 Based on the foregoing analysis, we affirm the trial court's dismissal of plaintiff's case and its award of attorney fees. We remand for the determination of the amount of appellees' attorney fees and costs related to this appeal.

¶ 26 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURRANT, and Judge GREENWOOD concur in Justice DURHAM's opinion.

¶ 27 Having disqualified himself, Justice WILKINS does not participate herein; Court of Appeals Judge PAMELA T. GREENWOOD sat.