IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, in the interest of A.W., a person under eighteen years of age. | ) ) | OPINION |
| _____ | ) ) | Case No. 20101010-CA |
| B.W.H. and S.H., | ) ) | |
| Appellants, | ) ) | F I L E D (April 12, 2012) |
| v. | ) ) | 2012 UT App 109 |
| State of Utah, | ) ) | |
| Appellee. | ) | |

-----

Seventh District Juvenile, Price Department, 1025019
The Honorable Scott N. Johansen

Attorneys:    Ronald C. Barker and Gary A. Frank, Salt Lake City, for Appellants
Mark L. Shurtleff and Carol L.C. Verdoia, Salt Lake City, for Appellee
Martha Pierce, Salt Lake City, Guardian Ad Litem

-----

Before Judges Davis, Thorne, and Christiansen.

THORNE, Judge:

¶1    Appellants Foster Father, B.W.H., and Foster Mother, S.H., (collectively, Appellants) appeal from the juvenile court's June 30, 2010 order, upholding the Division of Child and Family Services's (DCFS) refusal to consent to Appellants' adoption of A.W. and dismissing their petition. Appellants also appeal from the juvenile court's

December 1, 2010 order reaffirming the June 30th order and awarding attorney fees to the Guardian Ad Litem (GAL). We affirm.


BACKGROUND

¶2      On January 16, 2009, DCFS placed A.W. in foster care with Appellants. On October 7, 2009, DCFS removed A.W. from Appellants' home and placed her in respite care due to allegations of sexual abuse. The next day, Appellants filed a Verified Petition for Adoption seeking to adopt A.W. The petition was neither dated nor signed by counsel.

¶3      The sexual abuse allegations arose when A.W. disclosed that she "slept with her [Foster F]ather and that she liked it when he tickled her." DCFS questioned Foster Father, who responded "I wonder if she said I took funny pictures of her or if she said I bit her on the butt," claiming he may have accidentally bitten her while wrestling. On October 14, A.W.'s respite caregivers took her to the Children's Justice Center (CJC) for an interview regarding the sexual abuse allegations. Appellants, with some of their children, went to the CJC and waited in the parking lot during A.W.'s interview.[1] That

---

[1]Regarding Appellants' attendance at the CJC interview, Paul Smith, DCFS Director for the Eastern Region, testified on June 14, 2010, as follows,

Q. Was there some problem with [Foster Father] appearing where the [CJC] interview was occurring?
A. I have a report that he showed up at the CJC, outside the CJC and was—I believe someone had to ask him to leave.
Q. Do you know whether or not he got out of the car on that occasion?
A. I don't know.
    . . . .
Q. And did he ask you for permission to attend that meeting?
A. No, he did not.
Q. Did you indicate to him that he could wait outside if he wanted to?

(continued...)

same day, DCFS moved A.W. to a second respite home due to concerns about contact between A.W. and Foster Father while A.W. was at the first respite home. On October 29, Appellants received notice of agency action permanently removing A.W. from their home.

¶4 On January 19, 2010, Appellants filed an Amended Verified Petition for Adoption. Appellants also filed a motion seeking temporary placement of A.W. in their home. The juvenile court denied this motion. Appellants then filed a motion to vacate the juvenile court's order denying Appellants' request for temporary placement, which the court denied. On March 8, the juvenile court issued an order staying proceedings. On March 15, the second respite home caregiver (Adoptive Parent) filed a petition for adoption of A.W. in the juvenile court. Appellants were not notified of this adoption petition. On March 22, Appellants served a summons and Verified Petition for Adoption on the Attorney General and DCFS. DCFS filed a motion to dismiss Appellants' amended adoption petition for failure to achieve proper service. On April 28, the juvenile court approved and finalized A.W.'s adoption by Adoptive Parent.

¶5 On June 30, 2010, approximately two months after A.W.'s adoption was concluded, the juvenile court entered its order on the State's motion to dismiss

---

[1](...continued)

> A. I didn't tell him where the interview was going to be held. I remember him saying that he wanted to go to the Moab office and I suggested there's no reason for him to go to the Moab office.
> Q. Did you tell him not to go there?
> A. I said there's no reason for you to go to the Moab office.
> Q. Would you answer my question, please. Did you tell him not to go there?
> A. No.

On June 15, Foster Father testified that he had asked for and received permission from Smith to attend the CJC interview. Foster Father further testified that he went to the interview and waited in the van until Detective Kelly Bradford and investigator Wendy Watson came out of the CJC and informed Foster Father that the investigation would take a minimum of thirty days. Foster Father testified that after his discussion with Detective Bradford and Watson, he loaded the family back in the van and left.

Appellants' adoption petition. The court found that Appellants had not properly served the GAL with notice complying with Utah Code section 78B-6-110 until April 6, 2010, and did not properly serve DCFS with said notice until June 4, 2010. The court concluded that service pursuant to Utah Rule of Civil Procedure 4 is required in an adoption proceeding. Therefore, it was improper to proceed with pre-hearing motions until the indispensable parties, as outlined in Utah Code section 78B-6-110(7), had been notified. The court further found that "[a]t no time after removal of this child from [Appellants'] home would DCFS have consented to [Appellants'] adoption [of A.W.] as required by [Utah Code section] 78B-6-120(1)(g)," and referenced the eight reasons that Paul Smith, Director of the Eastern Region of DCFS, identified to explain why DCFS would not consent to Appellants' adoption of A.W.[2] The juvenile court concluded that because Appellants' adoption petition could not possibly comply with the requirements of the Utah Adoption Act, the court had properly considered Adoptive Parent's petition first. The juvenile court further found that A.W. had adjusted very well to her adoptive home and concluded that it would not be in her best interest to be adopted by Appellants. Thereafter, the court dismissed Appellants' adoption petition and ordered Appellants to reimburse attorney fees to the GAL, in an amount either to be stipulated by the parties or to be determined after further hearing, pursuant to Utah Code section 78A-6-902(6)(c).

---

[2]The reasons DCFS gave for not granting its consent are as follows: (1) the removal of the child from Appellants' home for violating rules regarding sleeping arrangements for foster children; (2) Foster Father had a "supported finding" of child abuse of his daughter within the last year, which finding an ALJ upheld and disqualified Foster Father as an adoptive parent; (3) Dr. John Livingstone's recommendation that Foster Father needed to learn appropriate behavior management skills and that the family should engage in family therapy; (4) Smith's review of police reports regarding two disorderly convictions for Foster Father; (5) Foster Father's lack of boundary issues regarding other foster children and foster parents, his refusing to follow DCFS's instructions, and his inappropriate and incessant contact with DCFS; (6) Appellants' loss of a foster care license due to violating the sleeping arrangement rules with regards to A.W.; (7) that Appellants had placed their home on the market in contemplation of moving to Colorado; and (8) Foster Father's unhealthy obsession toward A.W.

¶6     Appellants filed an objection to the order of attorney fees. After considering Appellants' objections and the GAL's responses, the juvenile court concluded that Appellants correctly noted that an award of attorney fees pursuant to section 78A-6-902(6)(c) was inappropriate because that section permits assessment of GAL costs against certain individuals, i.e., the child's parents, parent, or legal guardian, and that the specified categories do not include Appellants. *See* Utah Code Ann. § 78A-6-902(6)(c) (Supp. 2011). The court then concluded that an award of attorney fees against Appellants would have to rely upon Utah Code section 78B-5-825.[3] *See generally* Utah Code Ann. § 78B-5-825 (2008). The court "reaffirm[ed] it's previous findings that [Appellants'] position was without merit and in bad faith." Thereafter, the juvenile court considered the GAL's affidavit of costs, found that Appellants were not impecunious, and ordered Appellants to reimburse $12,000 in attorney fees to the GAL. Appellants appeal.

ISSUES AND STANDARDS OF REVIEW

¶7     Appellants assert that the juvenile court committed reversible error by granting DCFS's motion to dismiss Appellants' adoption petition because of a failure to properly serve the petition in compliance with Utah Code section 78B-6-110, *see id.* § 78B-6-110 (2008) (current version at *id.* (Supp. 2011)). Specifically, Appellants argue that the court erred in dismissing Appellants' adoption petition because DCFS had waived formal service of process by their appearance and active involvement in Appellants' adoption case. A court's decision granting a motion to dismiss is a question of law that we review for correctness, giving no deference to the court's ruling. *See Lunceford v. Lunceford*, 2006 UT App 266, ¶ 8, 139 P.3d 1073.

¶8     Appellants next assert that the juvenile court erred in finding that Appellants' adoption petition was without merit and in bad faith, and then ordering Appellants to reimburse attorney fees to the GAL pursuant to Utah Code section 78B-5-825, Utah Code Ann. § 78B-5-825. "In civil actions, the court shall award reasonable attorney fees to a prevailing party if the court determines that the action . . . was without merit and

---

[3]A finding of both lack of merit and bad faith are required before a court may award attorney fees under Utah Code section 78B-5-825. *See* Utah Code Ann. § 78B-5-825 (2008).

not brought or asserted in good faith . . . ." *Id.* Appellants argue that the adoption petition was filed in good faith. A trial court's determination that an action lacks merit is a question of law, which we review for correctness. *See Edwards v. Powder Mountain Water & Sewer*, 2009 UT App 185, ¶ 13, 214 P.3d 120. However, "it is within the discretion of the trial court to determine whether an action is asserted in bad faith, and we therefore review such a determination under the clearly erroneous standard." *Warner v. DMG Color, Inc.*, 2000 UT 102, ¶ 21, 20 P.3d 868.

¶9     Appellants lastly assert that the juvenile court violated the open courts provision of Article I, Section 11 of the Utah Constitution and deprived Appellants of procedural due process by denying them access to A.W.'s other adoption file, as well as participation in that case, and then denying Appellants' post-adoption objection to the adoption of A.W. "Constitutional issues, including questions regarding due process, are questions of law that we review for correctness." *Chen v. Stewart*, 2004 UT 82, ¶ 25, 100 P.3d 1177.


ANALYSIS

I.  Motion to Dismiss

¶10     Appellants assert that the juvenile court committed reversible error by granting DCFS's motion to dismiss based upon Appellants' failure to properly serve the petition in compliance with Utah Code section 78B-6-110, *see* Utah Code Ann. § 78B-6-110. Although the court did conclude that Appellants' service of the adoption petition was deficient, the juvenile court essentially based the bulk of its dismissal ruling on its conclusion that Adoptive Parent's competing adoption petition, filed after Appellants' adoption petition, was more compliant with Utah's adoption statutes and thus was properly considered on its merits first.

¶11     This court in *In re adoption of A.B.*, 1999 UT App 315, 991 P.2d 70, held that when two competing adoption petitions are filed, rule 42 of the Utah Rules of Civil Procedure applies. *See id.* ¶¶ 13–14. "Rule 42(a) permits a court to order a joint hearing to consolidate proceedings to avoid unnecessary delay." *See id.* ¶ 14; *see also* Utah R. Civ. P. 42(a). "In a consolidated adoption proceeding, the court may determine that one petition is the primary matter to be decided and hear that petition first. If that petition is granted, the adoption placement is concluded and there is no need to consider the

second petition." *In re adoption of A.B.*, 1999 UT App 315, ¶ 14 (footnote and citation omitted). In deciding which petition is the primary matter, the court "may examine 'the comparative merits of the competing petition for adoption' or may 'give procedural preference to the petition that is most compliant with the state's adoption statute.'" *In re adoption of A.A.*, 2002 UT App 321U, para. 2 (mem.) (quoting *In re adoption of A.B.*, 1999 UT App 315, ¶ 14 & n.4).

¶12     In this case, two competing adoption petitions were filed.[4] Appellants filed their original verified adoption petition on October 8, 2009,[5] and Adoptive Parent filed her adoption petition on March 15, 2010. Adoption proceedings on Adoptive Parent's adoption petition were held on April 28, 2010. Appellants were not given notice of Adoptive Parent's adoption proceeding.[6] Appellants learned of that adoption proceeding shortly after the juvenile court granted Adoptive Parent's adoption petition.[7] The juvenile court declined to consolidate the two adoption petitions.[8] The

---

[4]Judge Scott N. Johansen presided over both Appellants' and Adoptive Parent's adoption cases.

[5]Appellants also filed an Amended Verified Petition on January 19, 2010.

[6]The juvenile court, in Appellants' adoption case, concluded that Appellants are not in the class of persons entitled to receive notice of Adoptive Parent's adoption petition. We note that Appellants had filed a motion in their adoption case to vacate and contest A.W.'s adoption; however, such matters were not before the juvenile court in the hearing scheduled on DCFS's motion to dismiss.

[7]It appears that Appellants were informed of A.W.'s adoption on the afternoon of the day the adoption occurred. Appellants noted in their motion to vacate the adoption and contest the adoption filed on May 7, 2010, that "[d]uring the afternoon on 5/28/10, in response to an inquiry from counsel for [Appellants], [Assistant Attorney] General Lund informed [Appellants'] counsel that in a hearing before Judge Johans[e]n, a third-party had adopted [A.W.] that morning." Given that Appellants made this notation before the date listed in their motion, we presume that Appellants meant that they were informed of the adoption on the afternoon of April 28, 2010.

[8]It is not apparent from the record when the juvenile court had previously

(continued...)

juvenile court did, however, consider and determine which petition was properly the primary matter.[9] The juvenile court, in considering the State's motion to dismiss Appellants' adoption petition, concluded,

> 9. Contrary to [Appellants'] claim, there is no right to preferential consideration to adopt because their petition was filed first. Their petition was not ripe for consideration on April 28[,] 2010, [the day Adoptive Parent's petition was considered,] and could not have been granted on that day.
>
> 10. It is not in this child's best interest to be adopted by [Appellants].
>
> . . . .

---

[8](...continued)
considered consolidation of the two adoption petitions. In conclusion 6 of its order to dismiss Appellants' adoption petition in the instant case, the juvenile court stated,

> The Court declined to consolidate the two adoption petitions because: [(1)] That would have amounted to a waiver of the right of the GAL and DCFS to notice of [Appellants'] petition per [Utah Code section] 78B-6-110, [(2) Appellants'] petition was not ripe for hearing because of the absences of favorable adoption evaluations and the lack of consent from DCFS, the legal custodian, [(3) Foster Father's] bizarre behavior as described in various pleadings made the Court uneasy about the safety of the child and the [A]doptive [P]arent, were [A]ppellants to be made aware of their whereabouts[, and (4) Foster Father] had an abuse substantiation, albeit on appeal.

Importantly, Appellants do not argue that the court erred in declining to consolidate the two adoption petitions.

[9]At the hearing on DCFS's motion to dismiss, both the Attorney General and the GAL presented evidence pertaining to Appellants' adoption petition and argued that Appellants' adoption petition was not ready to be considered as Appellants had not complied with the statute and, therefore, Adoptive Parent's petition was the primary matter for consideration.

14. Consent from DCFS is required in order for this child to be adopted, per [Utah Code section] 78B-6-120(1)(g).

15. [Appellants] cannot pass the requirements outlined in [Utah Code section] 78B-6-128 regarding pre-adoptive placements.[10]

16. [Appellants] cannot pass the requirements of [Utah Code section] 78B-6-129 regarding post adoptive evaluations, and the Court declines to waive the same.[11]

17. [Appellants] cannot meet the requirements of [Utah Code section] 78B-6-131 [the requirements that must be met before a child who is in the legal custody of the state may be placed with the prospective adoptive parent].

---

[10]Section 78B-6-128 provides that a child may not be placed in an adoptive home until a preplacement evaluation has been conducted. *See* Utah Code Ann. § 78B-6-128(1)(a) (Supp. 2011). An exception is made in subsection (1)(b) that allows a court to authorize temporary placement of a child in a potential adoptive home if certain requirements are met under section 78B-6-131. *See id.* § 78B-6-128(1)(b). Section 78B-6-131 allows such temporary placement if, prior to placement, the department of human services conducts a check of the child abuse and neglect registry of the prospective adoptive parents, a fingerprint based FBI national criminal history records check is done, and each prospective adoptive parent undergoes and passes a background check. *See id.* § 78B-6-131 (2008). In this case, the court found that Foster Father "had a supported finding of child abuse of his daughter within the last year, which finding had been upheld by an Administrative Law Judge, and was on appeal, which findings disqualifies [Foster Father] as an adoptive parent."

[11]Section 78B-6-129 requires a postplacement evaluation be conducted and submitted to the court prior to the final hearing in an adoption proceeding. The exemptions from and requirements for evaluations detailed in section 78B-6-128 also apply to postplacement evaluations. Section 78B-6-129(3) allows a court to waive the postplacement adoptive evaluation unless the court determines that it is in the best interest of the child to require the postplacement evaluation.

. . . .

19. Because [Appellants'] adoption petition could not possibly pass the requirements of the Utah Adoption Act, it was proper for the Court to proceed with the other adoption petition first, and once it had been granted, there was no need to consider the second petition.

20. The withholding of consent by DCFS to adoption by [Appellants] is not unreasonable.

21. [Appellants'] adoption petition is deficient in that consent from DCFS has not and will not occur.

22. [Appellants'] adoption petition is deficient because [Foster Father] cannot pass a [background] check.

23. [Appellants] failed to demonstrate that they were a qualified adoptive placement.

24. The competing adoption petition was the most compliant with the Utah Adoption Act.

25. Adoption by [Adoptive Parent] is dispositive of the adoption proceedings.

26. [Appellants] are not in the class of persons entitled to receive notice of the other adoption proceeding.

27. [Appellants] could not have overcome any of the proffered evidence at the other adoption hearing.

28. Case No. 1033659, entitled DCFS vs [Appellants], is now moot.

With respect to Adoptive Parent's adoption petition, the juvenile court found at the adoption hearing on April 28, 2010, that "all notice requirements had been met, all pre

and post placement evaluations had been conducted, with [] favorable recommendations, that the adoption was in the child's best interest, and all requirements of the Utah Adoption Act . . . had been met."

¶13     It is apparent from the juvenile court's thorough analysis of the competing adoption petitions that the court followed the core procedure originally set forth in *In re adoption of A.B.*, 1999 UT App 315, ¶ 15.  The juvenile court, in considering DCFS's motion to dismiss,[12] held a two-day evidentiary hearing wherein the court heard arguments about the competing adoption petitions and testimony from eleven witnesses.[13]  Thereafter, the juvenile court took the matter under advisement and ultimately determined that Adoptive Parent's petition was most compliant with Utah law and had been properly heard first.  As such, Appellants were afforded an opportunity to participate in a hearing, at which the court would examine the comparative merits of Appellants' competing adoption petition.  Appellants do not present any argument that the court erred in concluding that Appellants' adoption petition was not as compliant as Adoptive Parent's petition and that Appellants had not, at the time of the adoption hearing, met the requirements of the Utah Adoption Act.  Because the court determined that Adoptive Parent's adoption petition, previously granted, was indeed properly heard first, there was no need to consider Appellants'

---

[12]The juvenile court, in its order setting the hearing, stated, "If this motion were well taken, it would be dispositive of several pending pleadings.  The Court will expect evidence on whether DCFS intends to withhold its consent to [Appellants'] adoption and if so, whether such withholding is reasonable, and such other matters that pertain to said Motion to Dismiss."

[13]The State called A.W.'s therapist, Austin Elder; DCFS Director Smith; Detective Bradford; Claudia Perkins, a licensed social worker who provided parenting instruction to Appellants; James Jennings, a licensing specialist with the Office of Licensing with the State of Utah; and Dixie Faucett, a social worker with DCFS.  After the State rested, Appellants and their fourteen-year-old daughter testified.  Appellants also called John Livingstone, a psychologist who had conducted a parental fitness evaluation for Appellants, and Michael Scalise, A.W.'s previous foster parent.

adoption petition. Therefore, we affirm the juvenile court's decision to dismiss Appellants' adoption petition.[14]

## II. Attorney Fees

¶14 Appellants next challenge the juvenile court's award of attorney fees to the GAL pursuant to Utah Code section 78B-5-825. *See* Utah Code Ann. § 78B-5-825 (2008). "In civil actions, the court shall award reasonable attorney fees to a prevailing party if the court determines that the action or defense to the action was without merit and not

---

[14]Appellants further argue that the juvenile court committed reversible error when it expanded DCFS's motion to dismiss for lack of adequate service to a motion for summary judgment on all of the issues involved in Appellants' adoption petition. Thereafter, Appellants argue, the court erred in granting DCFS's motion for summary judgment notwithstanding genuine issues of material fact. To show that this issue was preserved before the juvenile court, Appellants make the following statement regarding preservation:

> [Appellants] preserved this issue during the trial with numerous objections to the testimony being beyond the scope of the Motion to Dismiss and the fact that the transcript itself demonstrates that the evidence presented had nothing to do with issues of service of the Petition for Adoption and Notices but related to issues outside the basic justification for . . . DCFS's Motion to Dismiss based upon failure to serve. . . .

Rule 24 of the Utah Rules of Appellate Procedure provides that the brief of the appellant shall include "citation to the record showing that the issue was preserved in the trial court" or "a statement of grounds for seeking review of an issue not presented in the trial court." Utah R. App. P. 24(a)(5)(A)–(B). "[A] reviewing court is not simply a depository in which the appealing party may dump the burden of argument and research." *State v. Honie*, 2002 UT 4, ¶ 67, 57 P.3d 977. "If the petitioner's brief does not comply with rule 24, it may be disregarded or stricken, on motion or sua sponte by the court." *State v. Lafferty*, 2001 UT 19, ¶ 95, 20 P.3d 342 (internal quotation marks omitted). Appellants' reference to the record but without citation is not helpful and encompasses a considerable portion of the record. We therefore decline to review this particular issue.

brought or asserted in good faith . . . ." *Id.* "Accordingly, a finding of both lack of merit and bad faith are required to award attorney fees." *In re Olympus Constr., LC*, 2009 UT 29, ¶ 29, 215 P.3d 129.

A. Whether Appellants' Adoption Petition Was Without Merit

¶15 We first consider Appellants' argument that the adoption petition was not without merit. "Claims without merit are those which are frivolous or of little weight or importance having no basis in law or fact." *Warner v. DMG Color, Inc.*, 2000 UT 102, ¶ 22, 20 P.3d 868 (internal quotation marks omitted). The juvenile court's determination that an action lacks merit is a question of law, which we review for correctness. *See Edwards v. Powder Mountain Water & Sewer*, 2009 UT App 185, ¶ 13, 214 P.3d 120. Appellants assert that their adoption petition was not without merit because the juvenile court based its "without merit" finding on the erroneous conclusion that DCFS's consent was necessary for adoption pursuant to Utah Code section 78B-6-130. *See* Utah Code Ann. § 78B-6-130 (2008). Appellants also argue that when they filed their adoption petition they reasonably believed that DCFS would consent to their adoption of A.W.[15]

¶16 Appellants misconstrue the juvenile court's "without merit" finding. The juvenile court did not, as Appellants assert, base its conclusion that DCFS's consent was necessary for adoption pursuant to Utah Code Section 78B-6-130.[16] Instead, the juvenile court found that DCFS's consent is required by Utah Code section 78B-6-120(1)(g),

---

[15]In support, Appellants state that both Greg Daniels, Clinical Consultant/Adoption Specialist DCFS, Eastern Region, in his September 28, 2009 Postplacement Evaluation Report and the Adoption Committee in its December 12, 2009 recommendation recommended Appellants' adoption of A.W. We note that Daniels's recommendation that Appellants adopt A.W. was given prior to the removal of A.W. from Appellants' home and that the juvenile court found, in its order regarding GAL Attorney Fees, that Appellants knew or should have known that the Adoption Committee's recommendation of adoption was not binding but was a recommendation only.

[16]Section 78B-6-130 allows the court, upon request of a prospective adoptive parent, to order additional preplacement or postplacement evaluation if the person or agency conducting the evaluation disapproves of the adoptive placement.

which states, "[C]onsent to adoption of a child, or relinquishment of a child for adoption, is *required* from: . . . (g) the person or agency to whom an adoptee has been relinquished and that is placing the child for adoption." Utah Code Ann. § 78B-6-120(1)(g) (Supp. 2011) (emphasis added). The juvenile court further found that at no time after removal of A.W. from Appellants' home would DCFS, which had custody and guardianship of A.W., have consented to Appellants' adoption of A.W. The juvenile court concluded that because DCFS's consent was required under section 78B-6-120 and would not be given, Appellants' adoption petition was without merit. Having addressed Appellants' specific claim of error, we note that Appellants do not assert any other errors with the juvenile court's "without merit" finding. As a result, we decline to disturb this finding.

B. Whether Appellants Brought or Asserted Their Adoption Petition in Good Faith

¶17    "[T]he mere fact that an action is meritless does not necessarily mean that the action is also brought in bad faith." *In re Discipline of Sonnenreich*, 2004 UT 3, ¶ 49, 86 P.3d 712. A finding of bad faith must conclude that "(i) [t]he party lacked an honest belief in the propriety of the activities in question; (ii) the party intended to take unconscionable advantage of others; or (iii) the party intended to or acted with the knowledge that the activities in question would hinder, delay, or defraud others." *Gallegos v. Lloyd*, 2008 UT App 40, ¶ 15, 178 P.3d 922 (internal quotation marks omitted). "[I]t is within the discretion of the trial court to determine whether an action is asserted in bad faith, and we therefore review such a determination under the clearly erroneous standard." *Warner*, 2000 UT 102, ¶ 21.

¶18    Appellants argue that the juvenile court misinterpreted the attorney fees statute at issue in this case. Appellants assert that the "brought or asserted in good faith" language in the statute refers only to the parties' subjective intent when the action was filed. Appellants argue that the court erred in finding that Appellants filed their adoption petition in bad faith because the circumstances the juvenile court relied upon in its "bad faith" finding did not exist at the time Appellants filed their adoption petition. The GAL responds that the phrase "brought or asserted in good faith" allows the court to assess the parties' good faith both at the initiation of the action and during its continued assertion throughout the course of the action.

¶19    "Whether the [juvenile] court properly interpreted the legal prerequisites for awarding attorney fees under section [78B-5-825] is a question of law that we review . . .

for correctness." *Still Standing Stable, LLC v. Allen*, 2005 UT 46, ¶ 8, 122 P.3d 556 (omission in original) (internal quotation marks omitted) (analyzing the attorney fees statute at issue in this case).[17] "When interpreting a statute, we seek to give effect to the purpose and intent of the legislature" and "begin by examining the statute's plain language." *Hoyer v. State*, 2009 UT 38, ¶ 22, 212 P.3d 547. "Whenever possible, we interpret the plain language to give effect to all the statutory terms." *Id.*

¶20    The plain language of the attorney fees provision supports the GAL's argument that the phrase "brought or asserted in good faith" allows the court to assess the parties' good faith both at the initiation of the action and during its continued assertion throughout the course of the action. The statute's use of the phrase "brought or asserted [the action] in good faith" does not refer solely to the initiation of the complaint. We interpret the plain language to give effect to all the statutory terms and conclude that the term "asserted," used as an alternative to "brought," does not refer to the initiation of an action, but to the party's continued pursuit of the goal after the initiation of the action in pursuit of the claim. As a result, we reject Appellants' argument that the "brought or asserted in good faith" language in the statute refers only to the parties' intent when the action was filed and include in our consideration whether Appellants pursued the adoption action in good faith.

¶21    Appellants next argue that the juvenile court's finding that Appellants' pursued the adoption in bad faith was contrary to the evidence because Appellants had a sincere desire to adopt A.W. Appellants argue that at the time they filed their adoption petition they had passed all of DCFS's background tests and did not knowingly break any rules relating to the foster care of A.W. Thus, Appellants assert, they had no way of knowing that DCFS would decline to give their consent nor were they aware that the court would not exercise its discretion to order the adoption without DCFS's consent at the time they filed their adoption petition. The GAL, however, argues that the circumstances demonstrate that Appellants asserted their adoption petition in bad faith. In particular, the GAL argues that Appellants pursued the adoption with the intent to hinder and take unconscionable advantage of others and that Appellants' desire to adopt A.W. was

---

[17]*Still Standing Stable, LLC v. Allen*, 2005 UT 46, 122 P.3d 556, analyzed Utah Code section 78-27-56, the attorney fees statute, as it was formerly numbered until the 2008 amendment, wherein a stylistic change was made and that section was renumbered to 78B-5-825. *See* Utah Code Ann. § 78B-5-825 (2008) (amend. notes).

not fueled by good faith but by their desire to vindicate themselves, to harass and intimidate DCFS caseworkers and foster parents, and to pursue "an unhealthy obsession" with the child.

¶22    A finding of bad faith "turns on a factual determination of a party's subjective intent." *In re Discipline of Sonnenreich*, 2004 UT 3, ¶ 49, 86 P.3d 712.  "The wide variety of circumstances that might support a finding of such intent requires that we give a trial court relatively broad discretion in concluding that bad faith has been shown." *Valcarce v. Fitzgerald*, 961 P.2d 305, 316 (Utah 1998).  The juvenile court based its conclusion that Appellants brought or asserted their adoption action in bad faith on the specific circumstances of this case.  The juvenile court essentially found that Appellants lacked an honest belief in the propriety of the activities in question.  Specifically, the juvenile court found that Appellants acted in bad faith in pursuing the adoption action because

> [A.W.] was removed from [Appellants'] home in October 2009, [Appellants] allowed their foster care license to expire in December 2009, [Appellants] have violated DCFS rules regarding sleeping arrangements for foster children, [Foster Father] had a physical abuse substantiation finding which had been upheld by an Administrative Law Judge and was pending on appeal, . . . [A.W.] could not have been adopted by [Appellants] without a new six month residency in [Appellants'] home, [Appellants] knew or should have known that the recommendation of the adoption committee in December 2009 was not binding but rather a recommendation only, and [Appellants] knew that the competing adoption had already been granted in April 2010, long before the hearing on the motion by [DCFS] to dismiss [Appellants'] adoption petition.  Based on these facts, the likelihood of a Court ignoring the factors in favor of the competing adoption,[18] setting the competing adoption

---

[18]The juvenile court, in its decision on the motion to dismiss, wherein the court initially ordered attorney fees, found that A.W. was happy and had adjusted very well to her adoptive family.  A.W. expressed no remorse in leaving Appellants' home and

(continued...)

aside, removing the child from the competing adoptive home, placing the child with [Appellants] for six months even though they had no foster care license, and with all of the legitimate reasons for removal from [Appellants'] home in October 2009, and with no legitimate best interest arguments in favor of such actions, said likelihood is so remote as to make [Appellants'] petition in bad faith, and without merit. While much of these circumstances did not exist at the time that the adoption petition was filed, nevertheless the petition was "brought or asserted" in bad faith due to the development of these facts subsequent to the filing of the petition.

The record shows that Appellants knew the reasons for A.W.'s removal from their home prior to filing the adoption petition. Further, Appellants were aware that Foster Father had a physical abuse substantiation finding, which had been upheld by an ALJ, and that Appellants had allowed their foster care license to expire. It was not unreasonable for the juvenile court to determine that Appellants should have known that given the circumstances, the odds that the juvenile court would remove A.W. from her current placement and place the child back in Appellants' home were so remote that pursuing the adoption would constitute bad faith.[19] We defer to the juvenile court in concluding that the circumstances in which Appellants pursued their adoption petition demonstrate that Appellants lacked an honest belief in the propriety of the activities in question. As a result, we conclude that the juvenile court's finding that Appellants acted in bad faith is adequately supported.

---

[18](...continued) could not remember the name of anyone in Appellants' home except for one of the other foster children. The court concluded that "[i]t is in the child's best interest to remain in . . . her adoptive home. The child's best interest, standing alone, is sufficient reason to withhold consent to the adoption."

[19]This case does not appear to be one in which prospective adoptive parents are merely involved in a difficult adoption or wherein they would need to either challenge or obtain an exception to the applicable adoption rules in order to prevail. The presence of either such circumstance, without more, would likely not constitute bad faith.

¶23    The juvenile court did not abuse its discretion in determining that Appellants' action was without merit and was not brought or asserted in good faith. Therefore, we affirm the juvenile court's award of attorney fees to the GAL in these circumstances.

### III. Constitutional Claim

¶24    Appellants next argue that the juvenile court violated the open courts provision of Article 1, Section 11 of the Utah Constitution and deprived them of procedural due process by (1) denying them notice of the competing adoption petition, and thereby depriving them of the opportunity to intervene and challenge the adoption, (2) denying them access to A.W.'s adoption file in the competing adoption petition, and (3) denying their post-adoption objection to the adoption of A.W. We first consider whether Appellants preserved the constitutional issues raised on appeal. "As a general rule, appellate courts will not consider an issue, including a constitutional argument, raised for the first time on appeal unless the trial court committed plain error or the case involves exceptional circumstances." *State v. Richins*, 2004 UT App 36, ¶ 8, 86 P.3d 759 (internal quotation marks omitted). "In order to preserve an issue for appeal, it must be raised in a timely fashion, must be specifically raised such that the issue is sufficiently raised to a level of consciousness before the trial court, and must be supported by evidence or relevant legal authority." *Id.* (internal quotation marks omitted).

¶25    Appellants assert that they preserved their constitutional issues both in the various pleadings and during the hearing. In support, Appellants cite pages five through twenty of their Motion to Vacate Adoption and Contest of Adoption filed on May 7, 2010, and page sixty-eight of the June 15, 2010 hearing transcript. After reviewing the record cites Appellants provide, we do not agree with Appellants that they properly preserved the three constitutional challenges set forth in this appeal. Our review of Appellants' motion to vacate and contest the adoption reveals that the open courts violation Appellants asserted therein pertained generally to the juvenile court's failure to provide Appellants with notice but did so without supplying supporting evidence or relevant legal authority.[20] "The mere mention of an issue without introducing supporting evidence or relevant legal authority does not preserve that issue

---

[20]Appellants, in their motion to vacate and contest the adoption, focus on their claim of statutory entitlement to notice and do not adequately support their claim that lack of notice deprived them of due process.

for appeal." *State v. Brown*, 856 P.2d 358, 361 (Utah Ct. App. 1993) (internal quotation marks omitted).  Furthermore, nowhere in that motion or in the transcript[21] do Appellants assert the latter two issues regarding access to the competing adoption file and the denial of Appellants' post-adoption objection to the adoption of A.W.  For example, in their motion, Appellants recite Article I, Section 11 of the Utah Constitution and Utah Code section 78A-6-114 and argue that "[t]o the extent that withholding . . . information [from Appellants] concerning the compet[ing] petition to adopt [A.W.] was based on [Utah Code section] 78A-6-114 or juvenile court secrecy policy, [Appellants'] constitutional right to open courts were violated, which requires that [A.W.'s] adoption be vacated."

¶26    Appellants' passing argument, without legal reasoning or case law support, primarily concerns Appellants' entitlement to notice of the competing adoption petition, and is not sufficient to have preserved in the juvenile court the latter two constitutional issues they now wish to raise on appeal.  Utah courts require that the issue be specifically raised, *see State v. Low*, 2008 UT 58, ¶ 17, 192 P.3d 867, and "must be supported by evidence or relevant legal authority." *Richins*, 86 P.3d 759, ¶ 8 (internal quotation marks omitted).  Moreover, "[i]n order to preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (internal quotation marks omitted).  Because Appellants failed to introduce supporting evidence or relevant legal authority for the lack of notice issue raised below and failed to specifically raise their other arguments regarding access to the competing adoption file and denial of Appellants' post-adoption objection to the adoption of A.W., we deem Appellants to have waived any arguments regarding the constitutional issues in the juvenile court and decline to address them on appeal.[22]

---

[21]Our review of Appellants' transcript cite shows that Appellants asserted the open courts provision in response to the GAL's request, albeit unsuccessful, that Appellants' minor children be excluded from the courtroom and had nothing to do with the due process constitutional issues now being raised on appeal.

[22]Even if Appellants' issues were properly preserved, we would nonetheless decline to review the issues because Appellants' appellate brief is, in large part, devoid of any meaningful legal analysis.

CONCLUSION

¶27    In this case, two competing adoption petitions were filed.  The juvenile court held an evidentiary hearing pertaining to the comparative merits of Appellants' adoption petition.  The juvenile court concluded that Adoptive Parent's petition was most compliant and therefore the primary matter to be decided.  Once the juvenile court granted Adoptive Parent's petition, there was no need to consider Appellants' petition.  As such, the juvenile court properly dismissed Appellants' adoption petition.  Moreover, Appellants' adoption petition was without merit and there is adequate support for the juvenile court's determination that the action was not brought or asserted in good faith.  Therefore, we affirm the juvenile court's award of attorney fees to the GAL.

¶28    Appellants failed to preserve their argument that the juvenile court expanded DCFS's motion to dismiss into a motion for summary judgment and their constitutional issues.  Accordingly, we decline to address these issues on appeal.

¶29    Affirmed.


_____
William A. Thorne Jr., Judge


-----


¶30    WE CONCUR:


_____
James Z. Davis, Judge


_____
Michele M. Christiansen, Judge


20101010-CA                    20